## THE NO. 1004.

## THE NO. 30.

Circuit Court of Appeals, Second Circuit.
November 12, 1928.

No. 53.

Bigham, Englar & Jones, of New York City (Charles W. Hagen, of New York City, of counsel), for appellant.

Foley & Martin, of New York City (James A. Martin and Edward E. Elder, both of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge. The collision occurred in the East River close to the Brooklyn shore, off Adams street, in broad daylight, on the afternoon of May 31, 1924. The weather was clear, the tide flood, and the wind northwest. The steam tug Rochester, owned by Lehigh Valley Railroad Company of New Jersey, libelant, was coming down the East River bound for Jersey City with two carfloats in tow, the No. 801 being made fast alongside the tug's starboard side, and the No. 1004 being outside of the No. 801 and overlapping its bow. They started at the Forty-Seventh street pier on the New York side, and after passing Corlear's Hook crossed over and proceeded along the Brooklyn shore. At a point about 60 feet off Adams street the starboard forward corner of carfloat No. 1004 came into collision with the starboard stern corner of a carfloat in tow of New York Central tug No. 30. Tug No. 30 had pulled her carfloat out of the south side of Pier No. 34, East River, on a head line, and then shoved the carfloat toward the Brooklyn shore, so that she could pick it up on her starboard side after heading it into the tide. Her reason for going to the Brooklyn shore was to pass in front of a tow, which was seen coming up the river before tug No. 30 had started out. The tug's master also saw the Rochester and her tow coming down the Brooklyn shore, but apparently assumed she was at a safe distance for him to shove the carfloat directly across her course, either on the theory that he could complete the maneuver of picking up the carfloat before the Rochester would reach him, or on the theory that she would turn out to give him room. Having initiated his maneuver, he paid no further attention to the Rochester.

But the Rochester did not discover the presence of tug No. 30 and her carfloat until they were only 100 or 150 feet away. She came down the river without being able to see anything on her starboard hand from her pilot house, and with no lookout, or at least none who made any report to her master. Her failure, through lack of any lookout, or of a competent one, to observe what tug No. 30 was attempting to do with her tow until too late to avoid the collision, was clearly a fault which renders the Rochester responsible, at least in part, for the resulting damage.

204

The Ariadne, 13 Wall. 475, 478, 20 L. Ed. 542; The James T. Easton, 27 F. 464 (D. C.).

Tug No. 30 was also at fault. She pushed across the bows of the up-coming tow, and got herself directly in the path of the Rochester's tow, which was known to be coming down along the Brooklyn shore. Whether the No. 30 had missed in her first attempt to pick up her tow, and at the moment of collision had only one line out to the carfloat, as the libelant contends, or whether both lines had been made fast and the engines put in motion to proceed on her course, as respondent contends, seems to us immaterial. Neither the No. 30 nor its carfloat had a lookout, and the captain had no knowledge of the close approach of the Rochester until almost the moment of collision. Having put himself directly in her path, he paid no further attention, and assumed that she would turn out for him. Had he observed promptly that she was not doing so, a danger signal would doubtless have warned her in time to avoid the collision. Tug No. 30 asserts that she was entitled to a sufficient undisturbed area of water in which to make up her tow, but such principle cannot justify a disregard of the ordinary rules of caution, when she puts herself in the path of a vessel known to be approaching. The Edward G. Murray, 234 F. 61 (C. C. A. 2); Phenix Ins. Co. v. The Quaker City, 38 F. 153 (C. C.). The collision was in waters free from other vessels and in clear daylight. Neither tug was conscious of the presence of the other until the disaster was unavoidable. Both were at fault, and the loss should be borne equally.

The decree is reversed, and the cause remanded for entry of a decree in accordance with this opinion.