# CASES

## ARGUED AND DETERMINED

### IN THE

## CIRCUIT COURTS OF APPEALS AND DISTRICT COURTS OF THE UNITED STATES, AND COURT OF APPEALS OF THE DISTRICT OF COLUMBIA

---

### DENNIS v. ROBERTS.

Circuit Court of Appeals, Ninth Circuit.
May 9, 1927.

No. 4986.

1. **Appeal and error** ⊚⇒748(1)—**Plain errors only can be considered where assignments of error are insufficient because of generality.**

Where assignments of error are by reason of generality insufficient, Circuit Court of Appeals can consider only plain errors.

2. **Pleading** ⊚⇒127(2)—**Admission in pleading of technical term must be deemed qualified by specific denial of some of its meanings or natural implications.**

Where pleading contains an admission of a technical term, coupled with an express unequivocal denial of some of its meanings or natural implications, the admission must be deemed qualified by the specific denial.

3. **Shipping** ⊚⇒54(2)—**Lessee of boat held liable for destruction by fire, under evidence showing proximate cause thereof was its use as ram in dislodging grounded scow.**

Under evidence showing that fire, destroying oil-engine driven boat, was caused by use of boat as a ram in dislodging scow after going aground, lessee is liable for loss, notwithstanding that captain of the boat was in owner's employ, and deemed to have been his agent, since he was under obligation to take instructions from lessee, who had possession, with right to direct use of boat.

Appeal from the District Court of the United States for the Northern Division of the Northern District of California.

Suit in admiralty by Maude E. Roberts, as administratrix of the estate of Robert Harkinson, also written R. Harkindson, deceased, against V. R. Dennis, doing business as the V. R. Dennis Construction Company. From an interlocutory decree, declaring respondent's liability, respondent appeals. Affirmed.

19 F.(2d)—1

William B. Acton, of San Francisco, Cal., and J. M. Inman and P. G. West, both of Sacramento, Cal., for appellant.

S. Hasket Derby and Derby, Single & Sharp, all of San Francisco, Cal., and Guard C. Darrah, of Stockton, Cal., for appellee.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. In 1924, appellant, who was respondent below, being in need of facilities for transporting from one point to another on the Sacramento river sand to be used for highway construction, by letter dated March 18, 1924, addressed to one Ball, appellee's agent, offered to rent from the latter a scow and an oil-engine driven boat owned by appellee, upon certain specified terms. The proposal was promptly accepted, and both the boat and the scow at once went into appellant's service, and continued so to be used until April 27th, when the boat was destroyed by fire. The owner brought this suit in admiralty to recover for such loss, and from an interlocutory decree, declaring respondent's liability, the latter brings this appeal.

How the fire originated is not known with certainty While the boat was engaged in an effort to dislodge the loaded scow from a sand bar upon which it was stuck, the larger of the two engines "quit." Under order from the captain, who was in the pilot house, his son went back to start it, but immediately returned with a cry of fire, and upon opening up the hatches it was found that "the whole bilge was on fire, underneath, down in the bottom on the water"; that is, oil floating upon the shallow water in the bilge had in some way become ignited. The most plausible theory is that a feed pipe from the oil tanks to the engine had broken, with the result that instead

of being supplied to the engine, the oil wasted into the bilge, and, coming into contact with the highly heated exhaust pipe, was ignited.

The material part of the letter from appellant to Ball, which constitutes the contract, is as follows:

"Confirming our agreement by telephone, we agree to rent from you, and you agree to rent to us, for a period of two months, one new scow, 32-foot beam by 110 feet long, at $250 per month, time computed from the time the scow leaves Antioch until it is returned. Same to be returned in as good condition as when received, barring natural wear and tear. Also we agree to rent from you, and you agree to rent to us, the oil-engine driven boat Ruth, for a period of two months, at $10 per day and $6 per day for operator for the days he works, operator to board himself, we to furnish all necessary lubricating oil, fuel, greases, etc., for the operation of the said boat, and return the same in as good condition as when received, barring natural wear and tear. Time to be computed from the time the said boat leaves Antioch to the date it is returned."

In his libel the owner charges that at the time of her destruction the boat was in the possession, management, and control of appellant under this agreement, and that the fire was not caused by any act or fault on the part of the owner, or any act of God or the public enemy, but (as set forth in a separate count) by the reckless, unusual, and negligent use to which the appellant put the boat.

[1] By the appellant it is conceded that his assignments of error are, by reason of their generality, insufficient, and hence we can consider only "plain errors." There was no request for special findings, and none was made, except such as may be inferred from the brief "opinion." A sentence interpolated in the opinion in the form of a footnote, to the effect that there was no misuse or diversion of the boat, probably is to be taken as a part of an attendant comment upon another case, rather than as a finding in this case; but, in view of the fact that no part of the testimony was heard by the judge rendering the decision, this, as well as the whole matter of findings, is of little importance. American Asiatic S. S. Co. v. Robert Dollar Co. (C. C. A.) 282 F. 746.

[2] One of the principal questions discussed in the briefs is whether the contract is to be construed as a demise of the boat in a strict sense, importing exclusive possession in the appellant, with the unrestricted right to manage and operate the boat. While in its answer to the libel appellant in terms admits the allegation of demise, the admission is coupled with an express denial "that respondent took complete * * * possession, or management or control, * * * but * * * avers that Fred F. Ball [respondent's agent] retained complete possession, management, and control, and mechanical operation" of the boat. In respect to a pleading, as in the case of any other writing, we are concerned with its intent and meaning, and where there is an admission of a technical term, coupled with an express unequivocal denial of some of its meanings or natural implications, the admission must be deemed qualified by the specific denial.

[3] But if appellant be relieved from this admission, and if in accord with his contention we hold that he did not, by virtue of the clause in the contract obligating him to return the boat "in as good condition as when received, barring natural wear and tear," become an absolute insurer, a point upon which there is apparent want of harmony in the decided cases, and if, as we construe the agreement and the evidence, it be further held that within a limited range Nations, the captain of the boat, is to be deemed to have been the agent of the owner, it does not follow that we should disturb the decree. While the owner selected and paid Nations, in the most favorable view to appellant, such reservation of power and responsibility was for the purpose only of giving some assurance of skill and care in navigating the boat, including the handling of the engines and other operative parts. Nations was to take his orders from appellant, who had possession of the boat, with the right to direct its use. It may be conceded that the captain was under no obligation to take from him instructions to perform an ordinary task in a careless way, but he could not decline to perform a task merely because it was necessarily attended with extraordinary hazards. At most the owner assumed the risk of loss resulting from a failure on the part of Nations to exercise ordinary skill and care in performing work ordered by appellant, but upon the latter rested the risk of extraordinary hazards inhering in the task he imposed.

Under plaintiff's directions and insistent requirements the boat was undoubtedly subjected to very hard usage. The channel of the stream was shallow, tortuous, and shifting. Because of its exceptionally light draft, the boat could be kept afloat; but the scow, heavily loaded under appellant's exclusive direction, was continuously going aground, without fault or want of reasonable skill on the part of the captain. When so stuck in the sand, it was frequently impossible either to

pull or to push it back into the deeper water, and it was necessary to bunt or jar it loose; the boat being used as a ram. True, as a rule, the shock was not great; but, though light, it was frequent. Some inference of the possible effect upon the machinery may be drawn from the fact that in time the contacting parts of the hull became bruised and to some extent shattered.

Under all the evidence, the theory that the feed pipe parted as a result of these repeated shocks is more plausible than the other suggested theory that it was due to the natural vibration of the engine; at least, so to hold did not constitute a plain error. The casualty did not result from want of skill or care on the part of the captain in navigating the boat and handling her engines and other equipment. He repeatedly complained and objected, but without avail. The use of the boat as a ram is chargeable to requirements which appellant made, and had the power to make, and was a diversion from the purpose for which it was rented. Such use was attended with extraordinary hazards, and for the damages proximately resulting therefrom appellant must be held responsible.

Accordingly the decree appealed from is affirmed.