## THE E. J. BERWIND.

### M. & J. TRACY, Inc., v. CITY OF NEW YORK et al.

### THE SUMMITVILLE.

### THE MOTT HAVEN.

### No. 169.

Circuit Court of Appeals, Second Circuit.
Jan. 7, 1935.

Paul Windels, Corp. Counsel, of New York City (P. Fearson Shortridge and Willard M. L. Robinson, both of New York City, of counsel), for appellant City of New York.

Macklin, Brown, Lenahan & Speer, of New York City (Horace L. Cheyney, of New York City, of counsel), for appellee Berwind-White Coal Mining Co.

Henry W. Baird, of New York City, for libelant-appellee M. & J. Tracy, Inc.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The tug E. J. Berwind going up the East River on the flood tide and bound ultimately

into the Harlem River, had the barge Summitville on her port and the barge Eureka 21 on her starboard side. When about 300 feet off Ninetieth street, Manhattan, the ferryboat Mott Haven collided with the Berwind and her tow. The Mott Haven had left Riker's Island, en route for Blackwells Island, passed Hallet's Point, and slowed down to go under the stern of the ferryboat Jamaica that was bound from East Ninety-Second street, Manhattan, for Astoria. At about midchannel and just to the south of a line drawn between the southern end of Mill Rock and the south side of the park at Hallet's Point, the Mott Haven saw the Berwind and her tow coming up the river at approximately midstream off Eighty-Second street, Manhattan. When the Berwind had got up as far as Eighty-Sixth street, she moved from near the center of the stream further to the New York shore and blew two whistles to the Mott Haven to which the latter gave no answer. There was testimony that the Mott Haven blew one whistle to which the Berwind did not reply, but the trial judge found that the Mott Haven sounded no such signal, and that her first warning was an alarm. We see no reason to disturb the finding.

The master of the Mott Haven conceded that he could have held back and let the Berwind get by in order to proceed toward the coal dock at Ninety-Sixth street on the Harlem River, but instead of doing this he went forward, though he did not know whether the Berwind tow was going into the Harlem River or up through Hell Gate, until he reached a point where alarms, stopping, and backing were too late to prevent a collision.

In proceeding toward the Harlem River in the flood tide the Berwind and her tow were approaching a place where there were swift currents that set in different directions. In such a situation the District Judge held that the case was one of special circumstances in which "due regard be had to all dangers of navigation and collision * * *" (article 27, Pilot Rules [Inland Rules], 33 USCA § 212), and that prudent navigation required the Mott Haven to hold back "until she was able to ascertain either by observation or by an exchange of signals whether the flotilla was bound into the Harlem River or through Hell Gate." It is not necessary to hold that the case was one of special circumstances in order to reach the conclusion that the Mott Haven was in fault. She was keeping on without knowing where the Berwind was going and without sounding any

signal to the latter until it was too late to avert a collision by blowing an alarm, stopping, and reversing. Perhaps in view of the likelihood that a ferryboat would know that coal barges going upstream along Welfare Island were in all probability bound for the Harlem River, the Mott Haven should have taken it for granted that the Harlem River was in fact their destination and should have blown a signal to pass port to port or should have acceded to the signal of the Berwind if it was too late to inaugurate a port to port passage. But if, as seems to have been the case, the Mott Haven did regard the course of the tow as too uncertain for any definite signal, she should have blown an alarm and backed before she did.

The Mott Haven contends that the District Court was wrong as to the speed of the Berwind, as to the exact place where the collision occurred, and as to the asserted custom of vessels in the waters of Hell Gate whereby those going against the tide hold back and wait until they can ascertain the course of those running with the tide. But none of these things militates against the conclusion that the Mott Haven was at fault. Irrespective of any custom, we think it was plainly negligent for her not to blow an alarm at once when she did not understand the intention of the Berwind (article 18, rule 3, Pilot Rules [Inland Rules], 33 USCA § 203, rule 3) and to go forward in a place of such dangerous tides after the Berwind had blown two whistles for a starboard passage which, had the Mott Haven been attentive, she ought to have heard.

But we think the Berwind was also at fault. When she turned at Eighty-Sixth street toward the New York shore, she went up on the wrong side of the river at a place where the narrow channel rule governed. Article 25, Pilot Rules [Inland Rules] (33 USCA § 210); The Michael Tracy (C. C. A.) 43 F.(2d) 965. There was no proof that it was not "safe and practicable" to keep to the right instead of getting over within two or three hundred feet of the Manhattan piers. Had she done this, she would have passed under the stern of the Mott Haven and avoided any trouble. The Berwind also was at fault, when she received no answer to her signal of two whistles, to continue going forward in the flood tide, even for a short time. She was approaching the Mott Haven slightly on the port bow of the latter, and a port to port passage was the proper thing, for the two vessels were substantially head on, if we consider the general direction of

their courses (The Victory, 168 U. S. 410, 18 S. Ct. 149, 42 L. Ed. 519), and they should have passed port to port. The maneuver proposed by the Berwind was likely to result in disaster unless the Mott Haven changed her course, whereas the Berwind and tow would have been free from danger if the regular rule had been followed and they had kept to the right side of the channel. If the Berwind wished to propose a starboard to starboard passage in order that she herself might conveniently get to her dock at Ninety-Sixth street without the necessity of making so wide a swing, she should most certainly have stopped when she signaled and waited for an acceptance, and, when acceptance was not given, she should have blown an alarm and reversed.

To sum the matter up, we conclude that the Berwind was in fault for proceeding on the wrong side of the channel and insisting upon an improper starboard to starboard passage for her own convenience until too late to prevent a collision, and that the Mott Haven was in fault for failing to blow an alarm if she did not know what course the tow was to take. After the Mott Haven had reason to know the Berwind's destination, she was at fault for not holding back and for continuing on a course that was likely to result in a collision.

The decrees should be so modified as to divide the damages.