## GLOBE OIL DELIVERY CORPORATION v. CITY OF NEW YORK.

### No. 314.

Circuit Court of Appeals, Second Circuit.

July 16, 1942.

---

[1] Compare the dissenting opinion of Member Smith, 33 N.L.R.B. No. 50, July 9, 1941; 55 Harv.L.Rev. 269, 270.

Christopher E. Heckman, of New York City (Foley & Martin and James A. Martin, all of New York City, on the brief), for appellant.

George Seagrave Franklin, of New York City (William C. Chanler, Corp. Counsel, and Martin Faust, both of New York City, on the brief), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

On March 11, 1939, the city ferryboat Gold Star Mother left Staten Island about 4 P. M. on her regular run to Manhattan. As she was proceeding up the main channel in New York Harbor, she received a one-blast crossing signal from the light tanker New Berne, which was then off her starboard bow about 1,800 feet away and traveling southwesterly from the anchorage grounds diagonally across the channel towards Robbins Reef. The ferry responded to the tanker's signal with one blast and turned slightly to her starboard in order to go to the tanker's stern. When the vessels were only a few hundred feet apart and the tanker was either entirely or at least halfway across the ferry's bow, the tanker sounded a two-blast signal for a starboard passage and turned sharply to port. The ferry first slowed down and then turned hard to port full speed ahead in an endeavor to throw her stern out of the way of the tanker. This maneuver was not successful, for the bow of the New Berne struck the port side of the Gold Star Mother toward the latter's stern, causing injury to both vessels and to some of the passengers on the ferry. The proceedings herein, which have been consolidated for appeal, are a libel by the New Berne's owner, Globe Oil Delivery Corporation, against the city for the damages sustained by the New Berne and the Corporation's petition for limitation of, or exoneration from, liability, in which the City of New York has answered, claiming its damages. The District Court found the New Berne entirely to blame for the accident. Hence it dismissed the libel and, while granting the Corporation's petition to the extent only of limitation of liability, allowed the city its damages, to be ascertained by a commissioner.

It is clear that the extraordinary maneuver of the New Berne in suddenly crossing signals and in turning to port in such a manner as to strike the port stern of the ferry, after she had substantially crossed the ferry's course, was the direct and immediate cause of the accident. On this appeal, though not expressly conceding liability, appellant's real grievance is that it was held solely liable; for it asserts that the speed of the ferry and her holding direction too long made this a "close shaving" case wherein the master of the New Berne acted only in extremis. But we do not see how any excuse can be made for the New Berne's navigation. The testimony of the captains of both vessels is in agreement that had the vessels held their original courses no accident would have occurred. While there was some dispute as to just how far across the ferry's bow the New Berne had proceeded when the new signal was sounded, yet it is clear that she was at least halfway across. At that time there certainly was no excuse for the two-blast signal for passage to starboard; the original and agreed-upon port-to-port passage was obviously the only proper one. Even an alarm signal would not have been appropriate, but that would at least have been more understandable. The District Court suggests that this maneuver was occasioned by the deafness of the New Berne's master. His excuse was that he gave this two-blast signal in answer to a like signal from the ferry; but it seems clear, even on the testimony of his own seaman, that the ferry gave no such signal. It is not unlikely that the captain's deafness, which was abundantly proven, led him to think he heard what did not occur. At any rate, the court's finding of liability here is certainly correct, and the only question is whether or not the speed of the ferry was excessive.

On this latter point it is true that the ferry was maintaining her usual speed of 15 miles an hour, whereas the speed of the tanker was only 3 or 4 miles an hour. It is probable that the ferry's captain was quite prepared to proceed fairly close to the tanker's stern, and a finding of negligence under the circumstances for his failure to

638

slow down might well have been sustainable. Nevertheless, the trial court definitely found the basic facts to the contrary, and we do not feel justified in holding its finding clearly erroneous under repeated decisions of this court. Petterson Lighterage & Towing Corp. v. New York Central R. Co., 2 Cir., 126 F.2d 992, and cases cited. The testimony of the two masters that collision would not have occurred had the vessels held to their courses is, in any event, strong justification for the court's decision. Moreover, we can properly invoke also the old rule that, where the fault of the one master is glaring, the conduct of the other should not be so meticulously dissected as otherwise. The Victory, 168 U.S. 410, 423, 18 S.Ct. 149, 42 L.Ed. 519, 528; Theothilatos v. Martin Marine Transp. Co., 4 Cir., 127 F.2d 1016, 1018.

Affirmed.