## SOCONY VACUUM TRANSP. CO., Limited, v. GYPSUM PACKET CO., Limited.

### Nos. 174, 175.

Circuit Court of Appeals, Second Circuit.

Feb. 7, 1946.

John C. Crawley and Barry, Wainwright, Thacher & Symmers, all of New York City (Earle Farwell, of New York City, of counsel), for appellant.

Paul Speer and Macklin, Brown, Lenahan & Speer, all of New York City, for appellee.

Before L. HAND, CLARK, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

The Gypsum Packet Company, Ltd., owner of the freighter, "Gypsum Prince," appeals from a decree in the admiralty holding that ship solely liable for a collision in lower Delaware Bay with the "Voco," a tanker owned by the appellee, Socony Vacuum Transportation Company, Ltd. The pilots of the two vessels appeared at the trial and testified, as did the master of another ship which was present at the time; the rest of the evidence was taken by deposition. The "Gypsum Prince" was so injured that she sank shortly after the collision and carried down her master, her chief officer and four of her crew. In consequence the only witnesses she could call to the actual collision were her pilot, Johnson, and the wheelsman, who contributed almost nothing of moment. We accept the findings of the district judge, which were in substance as follows.

Each vessel had a speed of about 10 knots; the "Voco" was 394 feet long; the "Gypsum Prince" 347 feet. The collision was at 6:45 A. M. on March 4, 1942; it was dark, and, both vessels were carrying their statutory range and side lights.

The "Voco" was outward bound from Marcus Hook, Pa., and had reached the entrance of Delaware Bay where she anchored, awaiting examination by the Coast Guard before putting out to sea on a course which led through a channel, from a mile and a half to two miles wide, between the Delaware Breakwater and the shore on the west, and a line, 155° true, between two buoys—"Buoy A" and "Buoy B"— on the east. This line marked the boundary of a mine field; "Buoy A" was at its southern end, and "Buoy B" at its north. At 6:05, the "Voco" weighed anchor, and moved slowly towards the place where she was to be examined. When the examination was over at 6:29, she went ahead, swinging to port until she was on a course 157° true, substantially parallel with the line between the buoys, and about half a mile off the Breakwater. She had been on that course for a short while (apparently about six minutes) when she made out the "Gypsum Prince," about two and a half to three points on her port bow at a distance, which her pilot estimated at between two and a half and three miles. About two minutes afterwards she blew a single whistle and at the same time put her wheel to starboard, making "a slight change"; i e., about eight degrees. At that time the "Gypsum Prince" still bore about two and a half points on her port bow, and was about three quarters of a mile away. The "Voco" heard no answer to this signal, and, as the

"Gypsum Prince" appeared to her to be keeping her course, about two minutes later she blew a second signal of one blast. At that time the "Gypsum Prince" had changed her bearing to a point on the "Voco's" port bow; she was still showing the "Voco" her green light, and the vessels were about a quarter of a mile apart. After an interval variously estimated as between twenty seconds and a minute, the "Gypsum Prince" crossed the "Voco's" signal with two blasts, being then about half a point on the "Voco's" port bow, still holding her course. The "Voco" at once put her rudder hard left and her engines slow ahead. (The engineroom bell book shows that the engines were put slow at 6:44, the collision happened at 6:46.) The "Voco" had come back to her original heading of 157° true, when the "Gypsum Prince," contrary to her signal, suddenly swung to starboard under a hard right rudder across the "Voco's" bows. The "Voco" then in extremis put her rudder hard right and backed at 6:45. The collision occurred a minute later, the "Voco" striking the "Gypsum Prince" at an angle of about 70° on her port side about 30 feet aft of the bridge: i. e., 80 feet from her bow. The "Gypsum Prince" remained afloat for only about ten minutes and sank about 1000 feet east of the place of collision.

The navigation of the "Gypsum Prince" was as follows: As she rounded "Buoy A" about half a mile on her starboard hand, under a right rudder, two outbound vessels were bound down the channel, well over toward the center, headed parallel with the line of the two buoys. She had no lookout, but the master and chief officer were on the bridge with the pilot. She could have gone up the easterly side of the channel, keeping these vessels on her port hand; but instead, she crossed their bows and laid her course diagonally toward the Harbor of Refuge Lighthouse, which is at the southern end of the Delaware Breakwater. This course must have been about 310° true, as we shall show. Johnson made out the "Voco" while the "Voco" was still headed to the light, and noticed a little later that she was swinging to port to come down the channel, showing her red light. He blew one whistle, and gave the "Gypsum Prince" a right rudder, "easy, then midships and then steady," changing the heading only a degree or two to starboard. Apparently the "Voco" did not hear this signal; in any case it played no part in the result. Both ships kept on

their courses for a period which the judge found to be "about four or five minutes" when, as we have said, the "Gypsum Prince" answered the "Voco's" second signal of one blast with a two blast signal. At once thereafter she saw the "Voco" turning to port until she showed her green light. It was then that Johnson put his rudder hard right and his engines full speed ahead, and so continued until the collision. By that time she had swung to starboard about 100°.

■ We agree with the judge who found the situation to have been a crossing case, with the "Voco" the holding on vessel, and the "Gypsum Prince" the giving way vessel. He found the "Gypsum Prince" at fault on four grounds: First, for not keeping a proper lookout; second, for not keeping out of the "Voco's" way; third, for sounding a cross signal; fourth, for not stopping and reversing. He exonerated the "Voco" for changing her course to starboard when she first sighted the "Gypsum Prince," because he regarded this as "not a change of course at all, for the 'Voco's' course could still with 'accuracy be foretold.'" Moreover, he found that, even though it was a change of course, since it occurred two minutes before the two signal whistle of the "Gypsum Prince," "it was so remote that it could not have contributed to the collision." He also held that even if he was wrong on both these points that the faults of the "Gypsum Prince" were "so glaring that it is unnecessary to be overzealous in scrutinizing the conduct of 'Voco.'" The course of the "Voco" after she heard the two signal whistle of the "Gypsum Prince," he excused upon the ground that it was in the jaws of collision, and was probably the best one to pursue under the circumstances. He did not discuss whether the "Voco's" second single blast, two minutes after the first, was also a fault. On the appeal the "Gypsum Prince" does not seek to excuse her navigation, nor does she challenge the findings of the judge, except to suggest that we may find that the case was one of passing, head and head. We do not regard this as making an issue upon the appeal, especially as none of the assignments of error raise the point. We confine ourselves therefore to the "Voco's" supposed faults.

We cannot agree that her change of heading two minutes after she first made out the "Gypsum Prince" was not a "change of course" within the meaning of § 206 of 33 U.S.C.A. The vessels were already so

situated as "to involve risk of collision," although they would not have collided, had each kept her course and speed. But "risk of collision" does not mean certainty of collision; but only that prudence demands that the navigators shall watch each other's navigation, and be prepared to do whatever safety may demand. No change of heading is thereafter open to the privileged vessel, except such as the burdened vessel could foretell before the "risk of collision" arose; indeed, the very meaning of the rule is that thereafter the privileged vessel shall do nothing to change her successive positions as the burdened vessel could forecast them, when the burdened vessel began to be under a duty to keep out of the way. Decisions such as Commonwealth & Dominion Line v. United States, 2 Cir., 20 F.2d 729, and Clyde-Mallory Lines v. New York Central R. Co., 2 Cir., 83 F.2d 158, concerned changes in heading of which the burdened vessel was aware before the time arrived for mutual navigation. The judge thought that the "Voco's" change of course was in any event observable from the "Gypsum Prince," and for that reason held it not a fault. We may concede that if the burdened vessel has seen a change in course in time to change her navigation accordingly, it will not count against the privileged vessel; but that is not because the change was not a fault, but because it has had no part in the result. That was not true here. Johnson did not say that he observed the "Voco's" change of course, and it is plain that he could not have done so. In the dark nothing would show such a change but the range lights, and at a distance of several miles a change of eight degrees could not possibly be detected by the closest observation of these. We conclude therefore that the "Voco" was at fault for this change of heading, slight though it was.

■ Nevertheless we agree with the judge that even under the severe rule of The Pennsylvania, 19 Wall. 125, 22 L.Ed. 148, the "Voco" has shown that this fault could not have contributed to the collision. The course of the "Voco" after her change helm was 165° true; that of the "Gypsum Prince" was between 305° and 315° true, as follows from the findings that she cleared "Buoy A" with a berth of about half a mile and had the Harbor Light very fine indeed on her port bow. Taking her course at 310°, as we do, the courses of the two vessels were at an angle of 35°. At the time of collision the "Voco" had changed her heading back to 157° under her left rudder, but she could not have left her original course, for her "turning circle" does not allow her to do so with so little change in heading. Thus the collision must have happened when the "Voco" was still upon her course of 165°, true. The "Gypsum Prince" had turned over 90° under her hard right rudder. This follows from the fact that the angle of collision was about 70° and that the "Voco" was heading 157°. Literally, the "Gypsum Prince's" turn was about 100°, but that works out even more to her disadvantage and we will give her any benefit of the doubt as to the accuracy of the observation.

With these data we can figure out with some confidence where she was when she put her rudder hard right and went full speed ahead. Knight's * "turning circle" for a ship 350 feet long gives an "advance" of about 1000 feet before she has turned 90°, and a "traverse," or lateral movement of about 800 feet. We can plot back the "Gypsum Prince's" position upon her course by means of these figures; they place her bow just about upon the projected meeting of the courses 165° and 310° at the time when Johnson must have put his helm over. In short, the "Gypsum Prince" was very nearly, if not quite, crossing the "Voco's" course, and this is confirmed by the judge's finding that she was then only half a point upon the "Voco's" port bow—substantially dead ahead.

At that time the "Voco" at 10 knots must have been something less than 2000 feet from the point of collision for although it happened about two minutes later, she was not at full speed during that time. Had she not changed her course eight degrees to the westward, she would have been about 250 feet to the east of where she was when she blew the second single blast. We can approximate with some accuracy what difference in her bearing on the "Gypsum Prince's" bow this would have made when the vessels were about 3000 feet apart, as they must have been: it is about four or five degrees. Patently that difference could not by any possibility have been what induced Johnson not to continue on across the "Voco's" bow, as she could have done safely. Possibly he may have meant to blow only one blast; there was testimony from

---

* Knight, Modern Seamanship, 7th Edition, p. 303.

the "Gypsum Prince" that the single blast was extremely long; and that may have been why it sounded like two to the "Voco." Be that as it may, whatever induced him to put his rudder hard right and go on at full speed, it certainly could not have been that the "Voco" was four or five degrees finer on her starboard bow than she would have been if she had kept her course rigidly. He was laboring under that common illusion that a ship begins to leave her course when her helm is put hard over; instead, he went clear of the "Voco's" projected course and came back upon it later. Finally, it is reasonably certain that, had the "Voco" been on her course—157° true—and had Johnson done as he in fact did, the ships would still have collided. It is true that Johnson would have crossed the course, 157°, a little later than in fact he did; but that would have meant either that the "Voco" hit him further aft, or that he hit her starboard side. Certainly we are not called upon to spell out these doubts in view of the gross faults of the "Gypsum Prince." The City of New York, 147 U.S. 72, 13 S.Ct. 211, 37 L.Ed. 84; The Ludvig Holberg, 157 U.S. 60, 15 S.Ct. 477, 39 L.Ed. 620; The Umbria, 166 U.S. 404, 17 S.Ct. 610, 41 L.Ed. 1053; The Victory, 168 U.S. 410, 18 S.Ct. 149, 42 L.Ed. 848; Globe Oil Delivery Corp. v. City of New York, 2 Cir., 129 F.2d 636, 638. For these reasons we agree that this fault should not be counted against the "Voco." It is scarcely necessary to add that it is quite irrelevant that the "Gypsum Prince" would have crossed the "Voco's" bow, had the "Voco" not changed her course. She would have done so even as it was, if she had held her course, as we have said, she was already nearly across when she put her rudder hard right.

The next alleged fault of the "Voco" is in blowing her second single blast after waiting for two minutes without any answer, which the "Gypsum Prince" asserts to have been a violation of Rule III, § 203, 33 U.S.C.A. That has been made an assignment of error; but it does not appear in any of the pleadings of the "Gypsum Prince"; the judge did not deal with it; the record contains no evidence that it was ever considered; and it appears to be an afterthought, which it is doubtful whether we should consider. Nevertheless, we shall assume for argument that, because of the "Gypsum Prince's" not replying to the first signal, Ingram failed to understand her intention;

indeed, it must be owned that it is extremely difficult to explain his second blast on any other assumption. If so, he should not have repeated it, but should have blown four or more short blasts—the danger signal. It does not follow that he should also have backed; the "Voco" was the privileged vessel and the time had not yet come to change her speed. But, as in the case of the "Voco's" change of course, it is plain that a danger signal would have had no effect upon the result. Indeed, it is clear that Johnson took the single blast as itself a danger signal. To suppose that he would have done anything else had he got a danger signal, would be the merest pedantry.

The last fault alleged against the "Voco" is her conduct after the "Gypsum Prince" blew her double blast and later after the "Gypsum Prince" put her rudder hard right. When the "Voco" heard the double blast, its meaning could only have been that the "Gypsum Prince" meant to cross her bows as she could have done. The "Voco" cooperated with this proposal; she slowed her engines and put her rudder hard left; the reason why she did not reverse was that, like most ships, she swung to starboard when she backed, which would have put her over toward the "Gypsum Prince's" proposed course. The proposal absolved her from further duty to hold her course and speed. Moreover, she changed her heading only eight degrees, and could have gone forward less than her length. Finally, as soon as she saw that the "Gypsum Prince," contradicting that ship's own double blast, was swinging across her bows, again she did the right thing: she put her rudder hard right and went full speed astern. It is true that the engineroom bell book showed an interval of one minute between her slow ahead and full speed astern, but it does not follow that a minute had in fact elapsed, for engines are not logged at less than minute intervals. Moreover the situation became critical as soon as the "Gypsum Prince" started across, and it would have been of no moment, even if the "Voco" had made any errors in extremis.

It would have been indeed an unfortunate outcome to charge the "Voco" with half damages; at most her proportion of the loss ought to have been very small indeed. It is hard to see why we continue to insist upon an equal division which almost all the civilized world has repudiated, and for which it had substituted proportionate fault.

Nevertheless, although in the case at bar, we have not been called upon to apply that doctrine, which has nothing to commend it and everything against it, it must not be supposed that we should have hesitated to do so, had the facts warranted.

Decree affirmed.