## JAMES McWILLIAMS BLUE LINE, Inc. v. CARD TOWING LINE, Inc.

### No. 261, Docket 20972.

Circuit Court of Appeals, Second Circuit.

May 27, 1948.

Christopher E. Heckman, of New York City (Foley & Martin, of New York City, of counsel), for claimant-appellant.

Leo F. Hanan, of New York City, (Macklin, Brown, Lenahan & Speer, of New York City, of counsel), for James McWilliams Blue Line, Inc., libelant-appellee.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

The Card Towing Line, Inc., as claimant of the tug, "Edward Card," appeals from a decree in the admiralty, holding the tug solely liable for a collision in the Hudson River opposite Sixty-Eighth Street, Manhattan, on the night of January 18, 1943. The facts as found by the District Court—which we accept—were as follows: While the libellant's tug, "Feeney," with a dump scow on her starboard side, was bound north, on a course about 800 feet off the Jersey pier ends, she made out the down-bound tug, "Card," about 1500 feet directly ahead of her, with a large coastwise barge, the "Armistead," alongside on her starboard hand. Anchored in the river about 1000 feet or more from the Jersey peir ends was an ocean-going vessel 400 feet long, which was still headed upstream as a result of the ebb tide which had just yielded to slack water. When abreast of her and about 1000 feet from the "Card," the "Feeney" blew one blast,

calling for a port-to-port passing; the "Card" did not answer, and the "Feeney" went on for about 200 feet, when she blew a second single blast. Again she received no answer, except that the "Card" then blew a short toot apparently to rouse the lookout on the "Armistead;" and half a minute later the "Feeney" blew an alarm and put her rudder hard right, keeping her engines full speed ahead. Thereupon the "Card" blew an alarm and backed, throwing her own barge to port. The vessels collided 200 feet above the anchored steamer; the port bow of the "Armistead" striking the "Feeney's" port quarter about fifteen feet forward of her stern. On this appeal the claimant concedes that the "Card" was at fault, but among other faults it charges the "Feeney" with "continuing ahead at undiminished speed without change of course and without alarm signals in a head-on situation until about thirty seconds before collision."

The faults of the two vessels were unequal, and we cannot but be tempted to follow the judge and hold the "Card" alone at fault. Not only had she made up her tow most negligently, but she must have been grossly inattentive not to answer the first signal of the "Feeney." Nevertheless, we have not been able to find a way to exonerate the "Feeney." We have several times held that neither one of two vessels meeting head and head may put her rudder right until she gets an answer to her invitation to a port-to-port passing,[1] and it was therefore right for the "Feeney" to keep on until she got a response; and of course it was right to allow a reasonable interval for that purpose. That interval her master said was "about a minute" during which the court found that she had traveled 200 feet; and, whatever its actual length, we shall assume that she did not wait too long. However, when the time for a response was up, she blew a second single blast and still kept on at full speed for at least half a minute; and yet, in spite of this delay she nearly escaped, although the "Card's" backing had thrown the "Armistead" across her course. The failure to blow the alarm at the time when she blew the second single blast was a statutory fault; and it is apparent, not only that the "Feeney" has not proved that it could not have caused the collision; but there is the strongest probability that but for the delay there would have been no collision; for, had she, when she blew her second single blast, at once blown an alarm and put her rudder hard right, she would almost certainly have gone clear. Being already abreast of the bow of the anchored ship, she had nothing to fear in doing so; it was slack water and she was making three miles an hour over the ground.

Rule III of Article 18 of the Inland Rules[2] provides that "if * * * either vessel fails to understand the course or intention of the other, from any cause, the vessel so in doubt shall immediately signify the same by giving" the alarm. As we said in Socony-Vacuum Transportation Co. v. Gypsum Packet Co.,[3] to repeat an invitation for a passing or a crossing inevitably presupposes that the inviting vessel is "in doubt" as to the "intention" of the other; it can only mean: "You don't answer my invitation to pass port-to-port, I am repeating it because I still think it the proper course and I want to know whether you agree." In a number of cases courts have held vessels liable for failing to sound the alarm in such circumstances,[4] and indeed in Henry Du Bois Sons Co. v. A/S Ivarans Rederi,[5] we held it a fault even to delay doing so, for the action must be taken "immediately" after any doubt arises in the mind of the inviting vessel. It is true that

---

[1] Construction Aggregates Co. v. Long Island R. Co., 2 Cir., 105 F.2d 1009, 1012; The Richard J. Barnes, 2 Cir., 111 F.2d 294, 295; City of New York v. American Export Lines, 2 Cir., 131 F.2d 902, 905, 906.

[2] § 203, Title 33 U.S.C.A.

[3] 2 Cir., 153 F.2d 773, 777.

[4] The Virginian, 9 Cir., 238 F. 156; The E. J. Berwind, 2 Cir., 74 F.2d 705,

706; A. H. Bull S. S. Co. v. Chesapeake S. S. Co., 4 Cir., 101 F.2d 599, 601; General Seafoods Corporation v. J. S. Packard Dredging Co., 1 Cir., 120 F.2d 117, 119; The Mamei, 3 Cir., 152 F.2d 924, 927; Socony-Vacuum Transp. Co. v. Gypsum Packet Co., 2 Cir., supra, 153 F.2d 773, 777.

[5] 2 Cir., 116 F.2d 492.

the Ninth Circuit in The Felix Taussig,[6] said that a vessel in a narrow channel should have repeated an invitation for a starboard-to-starboard passing, although it exonerated her because her failure to do so did not contribute to the collision. It relied upon The Victory[7] (which incidentally concerned a collision before the Inland Rules had been passed) and our decision in The Three Brothers;[8] but in both cases the repeated blasts were bend signals not passing signals at all. A bend signal is only a warning of the approach of the vessel which sounds it; it is not intended as an invitation or any part of any agreement; and there is no objection to its repetition so long as it is understood for what it is. But it is extremely dangerous to insist upon an answer to an invitation after the time to answer has passed; as indeed nothing can better demonstrate than the very case at bar. We need not charge the "Feeney" for failing to back, although courts are usually very strict about that, for, as they are fond of saying, the rules are to avoid, not to promote, collisions. In the case at bar, had the "Feeney" backed it would have swung her tow to her own port, just as the "Card's" backing did to the "Armistead"; and that would have insured a collision unless their mutual approach had been altogether killed. With a clear berth to starboard, we may for argument allow it as a possible alternative, to go off to starboard under full speed; but it was excusable only if done in season. No doubt an effort to force an assent to a proper invitation is natural enough; resolute men find it hard to give in before an insolent disregard of their rights; but in such situations the masters of vessels, if it be necessary to avoid the "risk of collision," must yield even though it may seem to them timid or pusillanimous to do so.

Decree modified; damages divided.

[6] 9 Cir., 5 F.2d 612, 614.
[7] 168 U.S. 410, 18 S.Ct. 149, 42 L.Ed. 519.