## NATIONAL MOTORSHIP CORPORATION v. UNITED STATES.

### THE CLEVELANDER.

### THE LAURA KEENE.

Nos. 82, 83, Dockets 21114, 21115.

United States Court of Appeals Second Circuit.

Dec. 29, 1948.

Mahar & Mason, of New York City (Frank C. Mason and Anthony J. Randolph, both of New York City, of counsel), for appellee.

John F. X. McGohey, U. S. Atty., of New York City (Max Taylor, of New York City, of counsel), for the United States.

Before SWAN, CHASE, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The Clevelander, a twin screw Diesel powered steel vessel 250.6 feet long and of 1460 gross tonnage, owned and operated by the appellee National Motorship Corporation, and the Laura Keene, a single Liberty type vessel 442.8 feet long and of 7176 gross tonnage, owned by the United States, collided in the vicinity of Execution Light in the westerly part of Long Island Sound a little before nine o'clock on the evening of January 19, 1944. Both vessels were damaged and the owner of each sued the other. The two suits were tried together. The Laura Keene was held solely at fault and a final decree was entered dismissing the libel of the United States. The owner of the Clevelander was, in an interlocutory decree, allowed full damages. The United States has appealed from both decrees.

The findings, based upon sufficiently supporting evidence, reveal a situation where the navigators of the two ships disagreed as to the courses on which they should pass and each stubbornly insisted upon having his own way without any attempt to slow down to afford a time and opportunity for agreement. They thus brought their vessels into collision and, evidently because he justifiably felt that the evidence on the part of the Clevelander was the more reliable and that the passing course first chosen by the Clevelander's navigator was in accord with proper seamanship, the trial judge exonerated that vessel. He did, however, fail to give the required legal effect to certain contributory faults on the part of the Clevelander. These appear from the findings he made and which we accept, as they were not shown to be clearly wrong.

It was found that the Clevelander, bound light from Boston to New York with proper lights showing, was in charge of a licensed pilot on a west southwest course, or 236° true. She was heading directly for Buoy 44-A off Execution Rocks having passed three eighths of a mile northerly of Matinicock Buoy 21, when after passing a tow to her starboard, she made a slight change of course to starboard which then made her heading one on a course taking her between Buoy 44-A and Execution Light. At, or about, the time of this change of course she blew a one whistle signal to an approaching vessel, the Laura Keene. The latter had become visible to the Clevelander through binoculars when the vessels were five miles apart and had been in sight for some fifteen minutes. She had come from an anchorage in the vicinity of Hart Island and her course had been 30 degrees true until she was abreast of Gangway Rock Buoy 27. When about 300 yards off, and northerly of it, she had changed to 40 degrees true, and at the time of the Clevelander's signal was passing close to Sands Point Buoy 25. As she passed this buoy she changed to port to 37 degrees true to bring her heading more northerly. She was showing regulation lights and the relative headings of the two vessels made the Laura Keene show her green side light to the Clevelander which was then showing her red to the Keene. The tide was at the slack of the ebb, the visibility was good and there was no wind. There was about a half mile of water between the vessels when the Clevelander blew her one blast signal for a port to port passing and changed her course a little to the right.

The Laura Keene was also in charge of a licensed pilot who was unwilling to try to pass port to port. He immediately, and unlawfully, crossed the Clevelander's signal with one of two blasts and continued on at a speed of about ten knots without changing course. The Clevelander responded at once with another one blast signal and, keeping on at her full speed of seven knots, made an abrupt turn to her right. The Keene replied to the Clevelander's second signal with one but followed it at once with two and kept her course. The result, a few seconds later, was a collision in which the stem of the Keene struck the forward port side of the Clevelander at an angle of about 45 degrees. Neither vessel sounded an alarm or slowed until the Keene reversed her engine at the last moment and when it was too late to keep the vessels apart.

It has been conceded that the Keene was rightly held at fault and we agree. But we are unable to agree that the Clevelander was rightly exonerated. We have several times tried to make it clear that when vessels are approaching head and head, or nearly so, neither is at liberty both to choose the way to pass and to navigate accordingly regardless of the consent of the other, even though the choice at the moment it was made should prove to be the proper one. The navigators of the two vessels may not independently reach the same conclusion as to what should be done and until they have come to an agreement neither may with impunity navigate as though the other had agreed. Where, as here, time can be had to secure agreement and cooperation, time must be taken to get it. This, of course, requires some, and no doubt at times great, forbearance in the face of what appears to be, and may in fact be, quite unreasonable conduct. Human nature being what it is, our effort may be futile but we wish to repeat for emphasis what was said on this subject in City of New York v. American Export Lines, Inc., 2 Cir., 131 F.2d 902, 906, "We do not indeed mean that if the vessels are so close when they first see each other that the one which signals first cannot safely wait for an answer, she must do so; but when she is not pressed, she should learn whether the other vessel sees the mutual positions as she does. It begs the question to say that if the situation is really 'head and head' each vessel has only one duty; i. e., to port; that is true only if both so understand it. They may not; nothing is more common than for one to understand it in one way and the other in the other, particularly in a case like this where there is a bend in the channel. The only safe course is for the first vessel not to assume—even when the facts bear her out— that the other sees the situation as she does until she gets an assent. So the rule reads; so the Local Inspectors have understood it; so we have decided not only in Construction Aggregates Co. v. Long Island R. Co., supra [2 Cir., 105 F.2d 1009], but in The Richard J. Barnes, 2 Cir., 111 F.2d 294."

Here there was not only a failure to assent to the proposal but the one blast signal of the first vessel, the Clevelander, had actually, though unlawfully, been crossed with a two blast signal. The first vessel was a priori under the duty to hold back out of dangerously close quarters until she had assurance that the indicated disagreement was over and cooperation in passing could be had. If the signal of the Keene left her in doubt as to the latter's intentions she should have sounded an alarm in compliance with Rule III of Article 18 of the Inland Rules, 22 U.S.C.A. § 203, Rule III. James McWilliams Blue Line, Inc., v. Card Towing Line, Inc., 2 Cir., 168 F.2d 720; Henry Du Bois Sons Co. v. A/S Ivarans Rederi, 2 Cir., 116 F.2d 492. If, however, the Keene's crossing of her signal was taken at face value, as it should have been, the first vessel was already warned of an actual disagreement and it was incumbent upon her to act accordingly, instead of repeating her one blast signal and at full speed persisting in having her way on the chance that the Keene still might yield. The Quogue, 2 Cir., 47 F.2d 873. In so doing she in turn was guilty of "crossing" a signal unlawfully. Construction Aggregates Co. v. Long Island R. Co., 2 Cir., 105 F.2d 1009. In any event, she was at fault in her navigation after her first one blast signal and that obviously contributed to the cause of the collision.

Decrees modified to hold both vessels at fault and to divide the damages.