## THE ALLER.

## THE AMERICA.

### NORTH GERMAN LLOYD et al. v. SOULE et al.

(Circuit Court of Appeals, Second Circuit. April 7, 1896.)

COLLISION ON ANCHORAGE GROUNDS—STEAMER WITH TUG AND TOW.

A vessel which undertakes to navigate over anchorage grounds takes the risk of determining whether other vessels which she finds there are navigating or at anchor. *Held*, accordingly, that a steamship which, on leaving Hoboken, attempted to pass to the westward of a bark and tug on the anchorage grounds southeast of the Statue of Liberty, supposing them to be under way, and bound for the East river, was solely in fault for a collision with the bark, it appearing that the tug was merely holding the latter up against the tide, while she was getting in her anchor, and that neither of them did anything to mislead the steamship. 59 Fed. 491, affirmed.

Appeal from the District Court of the United States for the Southern District of New York.

This case comes here on appeal from a decree of the district court, Southern district of New York, which held the steamship Aller solely responsible for a collision which happened on April 4, 1895, in the harbor of New York between the Aller, outward bound, and the bark Enos Soule, then in tow of the steam tug America. Having sustained serious injury, the Soule libelled both steam vessels. The district court, however, held that no fault of the America was shown, and dismissed the libel as to her. 59 Fed. 491.

Wm. G. Choate, for appellant the Aller.

Geo. Bethune Adam, for appellee the America.

Harrington Putnam, for appellees Soule and others.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. It is hardly necessary to add anything to the discussion of the case by the district judge. Upon such facts in the case as are either conceded, or established beyond question by the proof, and assuming all the disputed facts to be as the Aller contends they were, the decision of the district court should be affirmed. No one pretends that the Soule was in any fault. She had arrived from Hong Kong with an East India cargo on April 2, 1893, and anchored with 45 fathoms of chain at a point about 350 or 400 yards to the southeast of the Statue of Liberty. This point

is well within the anchorage ground in the upper bay of New York, as defined and established by the secretary of the treasury under the act. of May 16, 1888. There was contention in the court below as to whether the Soule was or was not upon anchorage ground, but the Aller, upon this appeal, concedes that she was. On the morning of April 4th, the tugboat America came alongside, and made fast to the Soule's port quarter. It was flood tide, and, before the America arrived, the bark was heading southerly. In order to assist in raising the anchor, and getting her under way, the tug turned the bark around from the southward easterly, until she was heading somewhere in the direction between the Battery and the East river bridge, as variously put by the witnesses. Some of them make her heading N. N. E., which would be nearly for the North river; but the heading may be assumed, as stated in the appellant's brief, as being generally in the direction of the East river. The tug was then engaged in. holding her up to her anchor, while the crew of the bark, working an old-fashioned windlass on her forward deck, were slowly heaving anchor. The engine of the tug was working all the time, to keep her in position, generally working backwards a little, to resist the drift of the flood tide, which tended to carry her over her anchor. When the tug took hold of the Soule, she had about 30 fathoms of chain out, having been anchored in seven fathoms of water, with 45 fathoms of chain, and at the time of the collision she had still about 15 fathoms of chain out. As soon as the cable began to shorten, the anchor, although still on the bottom, ceased to bite, and, under the influence of the tide and of the tug, the bark dragged her anchor more or less. By the time of the collision, she had thus moved some 300 feet or more to the northward and eastward, but her anchor was still on the bottom, and we entirely concur with the district judge in the finding that she was not under way.

The Aller left her pier in Hoboken about 9 o'clock, and, when somewhere between pier 8 and the Battery, got sight of the America and the Soule on her starboard bow, and a mile or more away. Those in charge of the navigation of the Aller supposed the tug and tow were under way, and bound for the East river. Exactly what signals were given by the Aller is in dispute, but it is conceded that her navigators made up their minds to run to the westward of the tug and tow, changed her course, to carry out this maneuver, and failed to accomplish it safely, because the America and her tow did not move on in the direction of the East river, as those on the Aller supposed they would. Under a hard a-port wheel, the Aller left the channel, and ran over the anchorage ground, till she struck the Soule on the starboard bow, cutting into the bark from six to ten feet. The Soule, being concededly free from fault, is entitled to recover against one or other or both of the steam vessels.

No fault on the part of the tug is shown. She had a right to come on the anchorage ground; to take up her tow, and to assist the latter by turning her head in the proper direction, and by hold-

ing her up against the tide, while the bark was heaving anchor. She was not yet under way, and the rules as to holding course and speed were not applicable to her. Nor does the evidence show that she did anything to mislead the Aller. The accounts given by the witnesses for the Aller as to signals exchanged are not consistent. Her answer alleges a single blast by the Aller, a double blast by the tug, and a single blast by the Aller. The captain and chief officer describe them as one blast by Aller, no answer; another blast by the Aller, to which the tug replied with two blasts. The pilot's story is two signals of one blast each from the steamer, and two replies of two blasts each from the tug. Some of the Aller's witnesses undertake to say that the tug gave no signals, but the evidence is overwhelming that she did give a response of two blasts. It appears, then, that the Aller announced an intention to leave the channel, and run over anchorage ground, so as to pass to the westward of the tug and tow, and asked the latter to co-operate; but, instead of assenting to this proposition, the tug replied that the Aller must keep to the eastward, and that she (the tug) would not co-operate in the proposed maneuver. No one suggests that the tug was in fault for answering the Aller's signal, when she was not herself navigating, and certainly the answer which she did give could in no way mislead the Aller into a belief that she would co-operate in carrying out the latter's proposed maneuver. The Aller's signal was supposed by the navigator of the tug to be a two-blast whistle, and he admits that, if he had understood it to be a single blast, he might have dragged his tow, anchor and all, sufficiently to the eastward to avoid collision. But we concur with the district judge in the conclusion that "the tug and bark, not being under way, and being engaged in heaving the anchor, and being stationary by land, were under no obligation to start up and drag their anchor, in order to get out of the way of the Aller." Having the tug and tow on her starboard bow, it was the Aller's duty to avoid them, and, since she failed to do so, without contributing fault on the part of either tug or tow, she must bear the loss. The mistake which she made in supposing that they were navigating may have been a natural one, due to the circumstance that the bark did not head to the flood tide, but towards the East river. It was probably induced partly by another mistake, namely, the belief that the tug and tow were not on anchorage ground, but in the channel. But it is a mistake for the consequences of which the steamship is responsible. A vessel which undertakes to navigate over anchorage ground takes the risk of determining whether other vessels which she finds there are navigating or at anchor (Steamship Co. v. Calderwood, 19 How. 241); and, when such other vessels are in no fault, she alone is responsible for the results of her mistakes in that particular.

The decree of the district court is affirmed, with interest and costs.