## THE FORT GEORGE.

(Circuit Court of Appeals, Second Circuit.   December 12, 1910.)

### No. 74.

**1.** TOWAGE (§ 4*)—RELATION OF TUG AND TOW—RIGHT OF TUG TO DIRECT MOVEMENTS.

In the absence of an agreement to the contrary, a tug which supplies the motive power to her tow is the dominant mind, and the tow is required to follow directions from the tug.

[Ed. Note.—For other cases, see Towage, Cent. Dig. § 4; Dec. Dig. § 4.*]

**2.** COLLISION (§ 71*)—NAVIGATION OF RIVER—TOW AND ANCHORED DREDGE—FAULT OF TUG.

The barque Fort George, in tow of the tug Smith, passing down the Delaware river in the daytime at the last of the ebb tide, came into collision with one of three dredges anchored in a line up and down the river, near the middle, and engaged in deepening the channel.   In the condition of the tide the barque had only six inches of water under her, and for that reason would not answer her helm, and sheered against the dredge.   *Held*, that the fault was solely that of the tug, which was bound to know of the danger, and should have waited for the rising of the tide; that the tow had the right to assume that the tug was able to perform safely the duty she had undertaken, and was not in fault for allowing her to proceed.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 101; Dec. Dig. § 71.*

Collision with or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

Appeals from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the Maryland Dredging & Contracting Company, as owner of the dredge Vim, against Frank L. Neall, trustee, owner of the tug Sommers N. Smith, and the barque Fort George for collision.   Decree (172 Fed. 1008) against both vessels, and claimants appeal.   Affirmed as to the Smith; reversed as to the Fort George.

W. S. Montgomery and Roderick Terry, Jr., for the Sommers N. Smith.

Frederick M. Brown, for the Fort George.

Harry N. Abercrombie, for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

COXE, Circuit Judge.   The facts are fully stated in the opinion of the District Judge and need not be repeated here.   He found the Smith liable for towing the Fort George, which drew 22 feet, into water only 22½ feet deep.   With but 6 inches between her keel and the bottom of the river, she refused to answer her helm and collided with the Vim which was anchored near the center of the river, engaged in deepening the channel.   The tendency of vessels to steer badly, in such circumstances, is well known and the Smith was found at fault for proceeding in so dangerous a locality when all danger from bad steering would have been averted had she waited for the rising of the tide.   We are in entire accord with this ruling.   The tug knew or should have

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

known every danger to be encountered in the navigation of the Delaware river. Her master was required to know the depth of the channel, the rise and fall of the tide, the dredging operations at Deep Water Range, the location of the three dredges there and all the usual dangers to be encountered from Philadelphia to the breakwater. It was for the master of the tug to decide whether he could take the barque to her destination in safety; if he could not do so, or if there were risk in the undertaking, he should not have attempted it. If the situation at Deep Water Range made the trip unusually hazardous—and the presence of the three dredges anchored near the center of the river, together with the shallow water existing there, unquestionably had that effect—he should have waited for the flood tide or procured the services of another tug to assist him. Clearly the Smith was negligent in permitting the barque to collide with the Vim, which was at anchor and helpless. After condemning the tug the District Judge says:

"The situation was also known to the barque. Her pilot was aware that the dredges were lying in the channel, of the state of the tide and the draft of the barque. It was evidently the duty of the pilot on board of the barque, or of her master, to warn the tug of the facts and that it was not safe to proceed. In allowing the tug to go on, the barque participated in the risk and must bear a part of the consequences."

These faults are not charged against the barque in the pleadings, but, assuming that they are, we are unable to concur in the conclusions reached by the judge. The rule thus enunciated imposes too severe obligations upon the tow and makes her responsible for the failure to perform duties which the law places upon the tug. It is obvious that the expedition down the river could not have been taken under the joint command of the masters of the tug and the pilot of the barque. There can be no divided responsibility in such cases. Conference, discussion and agreement as to what course to pursue when danger threatens, between two vessels separated by a 70-fathom hawser, is out of the question. Some one must be in command. We understand the rule to be, in the absence of an agreement to the contrary, that when the tug supplies the motive power she becomes the dominant mind, and the tow is required to follow directions from the tug. An absurd situation would have been created had the pilot of the barque attempted to guide the tug down the winding channel of the Delaware river to the breakwater. It is probable that no sane tug master would accept a service so commanded, but if he had done so, it is more than likely that disaster would have occurred much sooner than it did. The employment of a pilot familiar with the navigation of the Delaware river to assist in steering was a wise precaution for the barque to take, as she was on a long hawser, and he would unquestionably know of eddies, shoals and cross-currents of which an ocean helmsman would be entirely ignorant. If the rule be established that a pilot so employed becomes the directing mind of both vessels and that it is his duty to stop the tug when in his judgment it is unwise for her to proceed, it is probable that such precautions as the barque took in order to insure safe steering will be seldom taken in the future, unless compelled by law. There was nothing to indicate to those on the barque that there was any special danger to be encountered in passing the dredges. They

did not know how much power the tug could exert in case any difficulty in steering was encountered. For aught that appeared to the contrary, the barque was justified in thinking that the tug felt herself fully able to cope with the situation, even if the barque "sucked the bottom." Those on the barque had a right to assume that the tug knew her own business and would pass the dredges safely.

The other faults alleged against the barque have not been established. After the tug cut the hawser she was helplessly adrift and did all that was possible to avoid the collision. She was justified in not dropping her anchor; first, because it was too late, and, second, because, in the shallow water, it might have torn a hole in her bottom. It follows that the decree must be affirmed as to the Sommers N. Smith and reversed as to the Fort George with costs, and the cause is remanded to the District Court with instructions to enter a decree against the Sommers N. Smith with costs.