## THE EDWARD G. MURRAY.

### (Circuit Court of Appeals, Second Circuit. May 24, 1916.)

### No. 260.

1. COLLISION ☞67—STARBOARD HAND RULE—APPLICATION.
   The starboard hand rule does not apply where one of the vessels is not on any course, but is maneuvering a tow and in effect stationary.

   [Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 85, 86; Dec. Dig. ☞67.]

2. COLLISION ☞72(2)—TUGS WITH TOWS—COMMON FAULTS.
   A collision in the daytime near the middle of East River between a loaded car float, which her tug had taken out from a slip on a hawser and was turning, so as to take her in tow alongside, and a tug and tow coming upstream, *held* due to faults of both tugs; the tug of the car float, which was on her up-river side pushing, being in fault for not maintaining a lookout on the tow, in consequence of which she did not see the approaching tug, and the latter for not stopping sooner.

   [Ed. Note.—For other cases, see Collision, Cent. Dig. § 102; Dec. Dig. ☞72(2).]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by the Susquehanna Coal Company, owner of the steam tug Paoli and barge Devon, against the steam tug Edward G. Murray, the Edward G. Murray Lighterage & Transportation Company, claimant, and the New York Central Car Float No. 46, the New York Central & Hudson River Railroad Company, claimant. Decree for respondents, and libelant appeals. Modified.

Oscar Dibble Duncan and Warner C. Pyne, both of New York City, for appellant.

William J. Martin and George V. A. McCloskey, both of New York City, for appellee Murray Lighterage & Transportation Co.

T. Catesby Jones, of New York City, for appellee New York Cent. & H. R. R. Co.

Before COXE and WARD, Circuit Judges, and HOUGH, District Judge.

COXE, Circuit Judge. The collision in question occurred in the middle of the East River at about 3:30 p. m. on February 20, 1914. The steam tug Paoli was proceeding up the river with the coal barge Devon in tow on her port side. She collided with the New York Central car float No. 46 which was lying in the river about opposite Wall Street. The tug Murray had towed the No. 46 from between Piers 14 and 15 East River to the position as stated above and had

---

cast off her lines. She intended to shove the bow of the float down stream and take her alongside prior to towing her to her destination, which was the West Shore Railroad docks at Weehawken. The float had on board twelve loaded cars. It was necessary for the Murray to tow the float out of the slip between Piers 14 and 15 by a short hawser and so maneuver in the middle of the river that she could get the float's toggle end down stream. Up to this time the Murray had done nothing to warrant holding her liable for the collision which afterwards followed. She was on the Brooklyn side near the center of the river. While in that position the Paoli with her tow came up the river. The Paoli's master saw the car float and the tug's stack when they were about a third of a mile away. The Murray's master could not see over the float and there was no lookout thereon. The Paoli saw the car float in the middle of the river as stated above and kept on until, as the District Judge finds, she took a rank sheer just before the collision. As there was plenty of room in the river, there was no necessity for the Paoli to keep on when it was plain that the float and tug were stopped—the tug apparently in distress and without control.

[1] We do not think the starboard hand rule applies to this situation for the reason that the vessels were not approaching each other; the tug and car float were lying in the middle of the river and were not under way at all.

The boats were not approaching on courses which involved risk of collision. The Murray and the car float were not on any course but were moving back and forth on the Brooklyn side of the center of the river. Unless an observer knew of her general destination from the business in which the tug and float were engaged, he could not have told whether the Murray's ultimate course was up or down the river.

[2] We are inclined to think that both vessels were negligent. The Murray should not have attempted to turn the unwieldy car float around and make fast to her side, when her master could not see over the car float and did not know the exact course and destination of the Paoli. There was no lookout on the float to warn him of the approach of the Paoli and her tow. The car float was not negligent as she was wholly under the control of the Murray and could do nothing to prevent the collision.

We are of the opinion that the damages should be divided between the two tugs. The Paoli is liable for proceeding until it was plain that she could not do so without collision and the Murray is liable for blocking the center of the river without a lookout on the float and without informing the Paoli by proper signals of the danger in attempting to pass such an unwieldly structure as the loaded car float until the Murray had got full control of her. Apparently the Murray neither saw the Paoli nor heard the whistles which she says were sounded. If there had been a lookout on the car float, he would have seen the approaching danger and warned the Murray in time. Such knowledge would probably have prevented the collision or at least lessened its force and the failure to take so obvious a precaution was

a serious fault. Especially was this so in view of the testimony of the master of the Murray as follows:

"Q. Before the collision occurred did you see something of the approach of the Paoli? A. I did not. Q. Did you hear anything? A. I did not. Q. What were you doing at the time the collision happened, were you pushing on the carfloat? A. Pushing under one bell, yes, sir."

It seems obvious that if a lookout had been stationed on the float the situation would have been known in time to prevent the collision or greatly to mitigate its force.

The decree is reversed with costs of this court to the appellant and the decree is modified so as to hold both vessels jointly liable.