### THE WASHINGTON.

### THE ROCHESTER.

(Circuit Court of Appeals, Second Circuit. March 13, 1917.)

#### Nos. 202, 203.

1. COLLISION ☞107—RULES—SPECIAL CIRCUMSTANCES.
   Where a vessel is navigating near the ends of piers, while a tug is bringing boats from a nearby slip to make up its tow, the case is one of special circumstances, within article 27 of the Inland Rules (Act June 7, 1897, c. 4, § 1, 30 Stat. 102 [Comp. St. 1916, § 7901]), and both vessels are required to navigate with care in view of the circumstances.

   [Ed. Note.—For other cases, see Collision, Cent. Dig. § 224.]

2. COLLISION ☞95(4)—TUG MAKING UP TOW—SPECIAL CIRCUMSTANCES.
   A ferryboat crossing the Hudson diagonally to the New York side starboarded across the bow of a down-bound tow, and came into collision with a car float which had just been brought from a slip by another tug and was being placed in a tow. The tug backed from the slip. *Held*, that the ferryboat was solely in fault, the maneuvers of the tug in making up the tow being proper, and that the failure of the tug to have a

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

lookout at her stern was not a contributory fault, since it was daytime, and the master of the ferryboat saw and appreciated the situation, and had ample room to keep clear of the tow.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202.]

Appeals from the District Court of the United States for the Eastern District of New York.

Cross-suits in admiralty for collision between the New York Central & Hudson River Railroad Company, as owner of the ferryboat Rochester, and the Delaware, Lackawanna & Western Railroad Company, as owner of the steam tug Washington. Decree against the Rochester, and its claimant appeals. Affirmed.

Harrington, Bigham & Englar and T. Catesby Jones, all of New York City, for the Rochester.

A. J. McMahon, of New York City, for the Washington.

Before COXE, WARD, and ROGERS, Circuit Judges.

WARD, Circuit Judge. February 22, 1914, about 9 a. m. of a clear day, with the tide slightly flood and the wind light from the southwest, the tug Washington was engaged in pulling two car floats out from the slip between the south side of Pier 13 and the north ferry rack of the Pennsylvania Railroad Company at Cortlandt street, North River. At the same time the ferryboat Rochester was coming down the river from Weehawken, N. J., to her slip between the ferry slips of the Pennsylvania Railroad Company and the Central Railroad Company of New Jersey.

The Washington proceeded in a manner familiar to all watermen. She backed out into the river with a line upon the bow of float 15, behind which was tailed float 28. When they were clear of the pier, the line from 15 to 28 was cast off; the tug took 15 on her starboard side, and was about to turn down on a port helm, so as to pick up 28 on her port side. In the meantime the Rochester had starboarded across the bows of a tug and tow coming down the river, and was headed directly into the end of Pier 13. In this operation she either scraped against the Washington and No. 15 and then collided with No. 28, or they were drifted by the wind and tide against her.

The District Judge properly held the ferryboat at fault on her own story for pocketing herself in this strange manner between the tow coming down the river and the Washington's tow coming out, and he dismissed the libel against the Washington.

[1, 2] The situation was plainly one of special circumstances under article 27 of the Inland Regulations. The Washington was not on any course, but maneuvering preparatory to getting on her course. The duty of each vessel was to exercise prudence under the circumstances. We have discussed this subject again in the case of Hurley v. The William A. Jamison, handed down herewith. The Washington took up no more of the river than was necessary for her maneuver, and there was abundant water for the Rochester to pass clear. That the vessels did not exchange any signals is evidence that they saw no need to do so.

The only fault that could be charged against the Washington would be the failure to keep a lookout. This is an obligation which we always wish to enforce strictly. If the Rochester had not seen the Washington, then the presence of a lookout on the tug might have resulted in an alarm signal, which would have apprised her of the danger. In such case the absence of a lookout might have contributed to the collision. D., L. & W. R. R. v. Erie R. R. Co., 238 Fed. 560, —— C. C. A. ——; James P. Stevenson v. Tug Wonson, 239 Fed. 857, —— C. C. A. ——. But her master says he saw the whole operation, so that an alarm signal from the Washington would not have informed him of anything that he did not already know. This is a case where the absence of a lookout on the Washington did not contribute and could not have contributed to the collision.

Counsel for the Rochester contends that our decision in Susquehanna Coal Co. v. Steam Tug Edward G. Murray, 234 Fed. 61, 148 C. C. A. 77, shows that absence of a lookout in the present case was not a fault. In that case, however, the tug which was held at fault for not having a lookout on the car float had begun to move the car float, and if warning had been given to the Paoli, it is possible she would not have undertaken to shave the car float so close. Judge Coxe said:

"If there had been a lookout on the car float, he would have seen the approaching danger and warned the Murray in time. Such knowledge would probably have prevented the collision, or at least lessened its force, and the failure to take so obvious a precaution was a serious fault. Especially was this so in view of the testimony of the master of the Murray as follows: 'Q. Before the collision occurred did you see something of the approach of the Paoli? A. I did not. Q. Did you hear anything? A. I did not. Q. What were you doing at the time the collision happened, were you pushing on the car-float? A. Pushing under one bell, yes, sir.' It seems obvious that, if a lookout had been stationed on the float, the situation would have been known in time to prevent the collision or greatly to mitigate its force."

The decree is affirmed.