## HENRY DU BOIS SONS CO. v. A/S IVARANS REDERI.

## A/S IVARANS REDERI v. HENRY DU BOIS SONS CO.

## THE D. NO. 22.

## THE SEGUNDO.

## THE ARIOSA.

### Nos. 114, 115.

Circuit Court of Appeals, Second Circuit.

Dec. 23, 1940.

Charles W. Hagen, of New York City (Hagen & Eidenbach and Henry C. Eidenbach, all of New York City, on the brief), for claimant-appellee.

Henry M. Hewitt, of New York City (Haight, Griffin, Deming & Gardner and James McKown, Jr., all of New York City, on the brief), for claimant-appellant.

John E. Purdy, of New York City (Purdy & Lamb, of New York City, on the brief), for libelant-appellee.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This libel and its cross-libel concern the responsibility for a collision in the North River on December 7, 1938, between the motor vessel Segundo and the dump scow D 22, the first of three mud scows in tandem tow to the steamtug Ariosa. Since the Segundo admitted fault, the only question is whether the Ariosa was also at fault, so as to require a division of the damages. The district court concluded that the Segundo was alone to blame;

hence it dismissed her cross-libel for divided damages, and entered an interlocutory decree in the scow owner's libel for the latter's full damage. The D No. 22, D.C.E.D.N.Y., 33 F.Supp. 144.

As the facts and the contentions of the parties are clearly stated in the opinion of the trial judge, extensive restatement is unnecessary. The facts were substantially undisputed; the one issue presented is whether the Ariosa delayed her warning signal too long when danger seemed imminent to escape partial responsibility for the collision.

On the afternoon of December 7, 1938, the Segundo, partly laden with freight, was backed out of Pier 7 at Jersey City on the west side of the North River. Because the tide was at ebb and to avoid shoal water below, she was headed upstream, although her ultimate destination was Philadelphia. When her tugs left her, she pointed substantially northeast; then she proceeded to swing to the right, intending to describe an .arc of nearly 180 degrees in order to reach her course. downstream. This swing continued until the accident, although there was some dispute as to whether it was quite continuous or whether there was a brief pause during which she pointed upstream. At the same time the Ariosa came downstream with her three barges in tow, at about six miles an hour with the tide. Sorensen, master of the Ariosa, saw the Segundo about 3,000 feet away. But the Segundo then experienced difficulties; although her rudder was put hard right, she responded only sluggishly and continued to come ahead somewhat on an angle toward the approaching Ariosa. There appears to have been a tumult on the Segundo; at any rate, there was no lookout, and the Segundo was oblivious to her danger until the Ariosa sounded an alarm, when the vessels were only 400 or 500 feet apart. The Segundo then dropped an anchor to port—which did not hold—and put her port engine from full speed ahead to full speed astern. This was too late. The Segundo cleared the Ariosa, but struck the first tow, the D 22, with resulting damage to both vessels.

The Segundo's difficulties seem to have been due to some trouble with her rud-. der; at any rate, she did not answer her helm properly and her fault is conceded. We turn, therefore, to the activities of the Ariosa during the period of some four minutes when she traversed the 2,500 feet after Sorensen first saw the Segundo and until he sounded the alarm signal. The court below exonerated the Ariosa because the Segundo's course could not be fathomed, in view of her uncertain movement—until perhaps a minute before the alarm was sounded. It questioned whether, "assuming, without finding, a lag in the reflexes of Sorensen, the tug's navigator, of the indicated duration," it was fair to conclude that the delay of about one minute in blowing the alarm contributed to the accident. We do not believe, however, that the Ariosa is to be thus excused from all action to avoid collision while the Segundo was directly under her observation for a substantial interval of time. We think that this constituted a violation of the rules of navigation under the circumstances here present; and under well-settled precedents such violation must be held a participating cause of the disaster, unless the contrary is shown. The Pennsylvania, 19 Wall. 125, 86 U.S. 125, 136, 22 L.Ed. 148; Lie v. San Francisco & Portland S. S. Co., 243 U.S. 291, 298, 37 S.Ct. 270, 61 L.Ed. 726; The New York Marine No. 10, 2 Cir., 109 F.2d 564, 566. Here, certainly, the contrary cannot be shown; in fact it seems likely that had the Segundo received timely warning she would have acted with anchor and engines in time to have avoided the collision.

The navigation rules which the Ariosa is claimed to have violated are those concerning (1) her failure to give a starboard passing signal when she first saw the Segundo, and (2) her delay in sounding the alarm. As to the first, Rule I, Art. 18, Inland Rules of Navigation, 33 U.S.C.A. § 203, requires steam vessels about to pass to the starboard side of each other each to give two short blasts of the whistle. The Ariosa claims that this rule does not apply because the vessels were not, as the rule states, "meeting end on or nearly end on, in such a manner as to involve risk of collision." But, in addition to this statutory rule, we have Pilot Rule III of the Supervising Inspectors—adopted pursuant to statutory authority, 33 U.S.C.A. § 157—which . provides that the passing signals shall be given "not only when meeting 'head and head,' or nearly so, but at all times when the steam vessels are in sight of each other, when passing or meeting at a distance within half a mile of each other, and whether

passing to the starboard or port." This rule has been upheld in The D. S. Dumper No. 305, 2 Cir., 77 F.2d 315; The Transfer No. 18, 2 Cir., 74 F.2d 256; and State of Maryland v. Standard Oil Co. of New Jersey, D.C.Md., 8 F.2d 514. See also Postal S. S. Corp. v. El Isleo, 308 U.S. 378, 60 S.Ct. 332, 84 L.Ed. 335. The North River is little more than half a mile wide at this point, and the Ariosa was in mid-channel. It is obvious, therefore, that, if the Segundo was to pass the Ariosa starboard to starboard, the passing would be at a distance of not more than a quarter mile, and well within the rule.

The Ariosa's excuse is that the Segundo never intended a starboard passage, but Sorensen testified that when he first saw the Segundo he thought she was going up the North River along the Jersey shore, and then, as she moved out toward the center of the river "crabwise," he thought that she was working her way out toward the center of the river before continuing upstream to her destination. In other words, on his own showing, an alert navigator would have sounded the two-blast passing signal.

It is true, however, that this was not the Segundo's purpose. Perhaps we should give Sorensen the benefit of the doubt and hold him only for her intended course. But then we think that simply brings him to the other horn of his dilemma. For on that assumption he had the vessel under observation for approximately four minutes, not knowing what she was to do—indeed he appears to have told the local inspectors that he had "no idea what she was trying to do." And then he runs into the other rule he is claimed to have violated. Rule III, Art. 18, of the Inland Rules, 33 U.S.C.A. § 203, provides: "If, when steam vessels are approaching each other, either vessel fails to understand the course or intention of the other, *from any cause*, the vessel so in doubt shall *immediately* signify the same by giving several short and rapid blasts, not less than four, of the steam whistle." (Emphasis added.) This is substantially repeated in Pilot Rule I as the "Danger Signal." See Merritt, Chapman & Scott Corp. v. Texas Co., 2 Cir., 98 F.2d 719, 721. But here he delayed his danger signal until it was ineffective.

It seems to us not in accord with these rules that in the busy North River a vessel may watch another approaching in front of her midstream when the latter's course is not at all understood and refrain from sounding a warning signal of any kind until the intervening space has been reduced from 3,000 feet to 500. Had the Ariosa given a starboard passing signal, we should have been disposed to think her justified in so doing. But when she failed to do this, relying on the uncertainty of the Segundo's action, it was surely her duty to give the alarm signal at once, and not to delay either one minute or four minutes. We think her delay was fatal. The Richard J. Barnes, 2 Cir., 111 F.2d 294, 295; Construction Aggregates Co. v. Long Island R. Co., 2 Cir., 105 F.2d 1009, 1011; Postal S. S. Corp. v. Southern Pac. Co., 2 Cir., 112 F.2d 297, certiorari denied 311 U.S. ——, 61 S.Ct. 50, 85 L.Ed. ——.

The decree in the libel is modified, and that in the cross-libel is reversed, to provide that the damages sustained by the D 22 and the Segundo shall be divided between the Segundo and the Ariosa.