### BAKER, CARVER & MORRELL SHIP SUPPLIES, Inc., v. MATHIASEN SHIPPING CO., Inc., et al.

### THE ADELAIDE.

### THE DILIGENT.

### THE WILLIAM F. MESECK.
#### No. 185.

Circuit Court of Appeals, Second Circuit.
Feb. 9, 1944.

Pyne & Lynch, of New York City (Anthony V. Lynch, Jr., of counsel) for libellant-appellee.

Foley & Martin (James A. Martin and Christopher E. Heckman, both of New

York City, of counsel), for respondent-claimant-appellee.

Purdy & Lamb (Edmund F. Lamb and Thomas J. Irving, both of New York City, of counsel), for respondent-claimant-appellant.

Before L. HAND, AUGUSTUS N. HAND and CHASE, Circuit Judges.

CHASE, Circuit Judge.

This is an appeal from an interlocutory decree in admiralty holding the tug William F. Meseck, claimed by Meseck Towing Co., Inc., solely at fault for colliding with and damaging the libellant's motorboat Adelaide. The libellant sued that tug and her owner and the tug Diligent and her owner in the District Court for the Eastern District of New York. The tug Diligent, claimed by Mathiasen Shipping Co. Inc., was exonerated.

This appeal by Meseck Towing & Transportation Co., Inc., was argued on a record which contains the evidence of the only witness who testified and whose evidence relates solely to facts about which none of the parties disagree at all. To support the disputed questions of fact on which decision as to liability must turn, the parties rely wholly upon the pleadings, amplified by answers which the claimant of the Meseck made to interrogatories filed by the libellant, to which was attached a report made by the master of that tug to his owners. The libellant's motorboat was damaged in a collision when she was moored under circumstances which show that she was wholly without fault. The sole question presented is whether there was proof of the allegations in the libel.

The undisputed facts which are shown by the testimony of the one witness, Captain Bror Andersson, are as follows:

About eleven o'clock on the night of August 29, 1941, he left the libellant's motorboat Adelaide, of which he was master, securely moored in the 27th Street slip in Brooklyn alongside a floating bridge. She was then undamaged, tight and sound. He went back to the boat about 9:30 o'clock the next morning and found that she had been shifted "in between a small dock and another dry dock" later identified as dry dock No. 6. Her stern had been damaged and the "whole port bow squeezed in." She was then about half full of water. Two hours later, after being pumped out, she was taken to a dry dock for repairs which took about a week.

After the usual formal allegations respecting the parties, the libel alleged as follows:

"Sixth. On the morning of August 30th, 1941 the motorboat 'Adelaide' was lying securely made fast in the slip at the foot of 27th Street, Brooklyn, otherwise known as Wood Dock No. 7. While so lying made fast in the slip the tugs 'Diligent' and 'William F. Meseck' entered the slip with a steamer known as the 'Kirsten B' in tow, and upon information and belief the master of the tug 'Diligent' or some other master employed by Mathiasen Shipping Co., Inc., was on the bridge of the 'Kirsten B' and directing the navigation of the tug and the steamer.

"While attempting to pass the motorboat 'Adelaide' the tug 'William F. Meseck' came into collision with the motorboat 'Adelaide', as a result of which the 'Adelaide' sustained considerable damage.

"Seventh. The aforesaid injury and damage resulting therefrom occurred without any fault or negligence on the part of the motorboat 'Adelaide' or those in charge of her, but were due solely to the fault and neglect of the respondents Mathiasen Shipping Co. Inc., Meseck Towing & Transportation Company and their agents and servants, the steamtugs 'Diligent' and 'William F. Meseck,' and the master in the employ of Mathiasen Shipping Co., Inc., who was on the bridge of the steamer 'Kirsten B.' * * *."

The now pertinent part of the answer of the Meseck Towing and Transportation Co., Inc., follows:

"Sixth. Denies each and every allegation contained in the Sixth Article of the Libel, except that it admits that on the morning of August 30, 1941, the steamtugs 'Diligent' and 'William F. Meseck' entered the slip at the foot of 26th Street, Brooklyn, New York, with a steamer known as the 'Kirsten B' in tow, and that the master of the steamtug 'Diligent' or some other master employed by Mathiasen Shipping Co., Inc., was on the bridge of the 'Kirsten B' directing the navigation of the tugs and steamer.

"Seventh. Denies each and every allegation contained in the Seventh Article of the Libel.

* * * * * *

"Further Answering the Said Libel, This Respondent and Claimant Alleges, on In-

formation and Belief, that the True Facts and Circumstances are as Follows:

"Tenth. That on the 30th day of August, 1941, the steamtug 'William F. Meseck' arrived at 27th Street, Brooklyn, New York, to assist the steamtug 'Diligent' in berthing the steamer 'Kirsten B' which was to be placed in the slip at the foot of 26th Street, opposite the Floating drydock No. 6. The steamtug 'William F. Meseck' was tied up to the port bow of the said steamer and the steamtug 'Diligent' was tied up to the port quarter of the steamer, pursuant to the directions of the captain of the steamtug 'Diligent' who was stationed on the bridge of the said steamer, and in berthing the steamer the master of the steamtug 'William F. Meseck' received his orders from the captain of the steamtug 'Diligent.'

"The motorboat 'Adelaide' was tied up ahead of drydock No. 6 and between drydock No. 6 and the pier at the north end of the slip, and her stern protruded into the slip causing an obstruction to navigation.

"That in maneuvering into the slip pursuant to the directions of the captain of the steamtug 'Diligent,' the steamtug 'William F. Meseck' slightly rubbed the motorboat 'Adelaide,' and said contact was not due to any fault or want of care on behalf of the steamtug 'William F. Meseck' and/or this respondent and claimant, but was due solely to the fault and neglect of the motorboat 'Adelaide' in improperly blocking the slip, and/or the fault, neglect and want of care of the respondent, Mathiasen Shipping Co., Inc., its agents and servants, and the steamtug 'Diligent.'"

The answer of the Mathiasen Shipping Co., Inc., so far as now material, is as follows:

"Sixth. It denies each and every allegation, contained in that paragraph of the libel numbered 'Sixth,' except as may be hereinafter admitted.

"Seventh. It denies each and every allegation contained in that paragraph of the libel numbered 'Seventh.'

\* \* \* \* \* \*

"Further Answering the Said Libel Respondent Alleges:

"Tenth. On or about August 30th, 1941 the tugs 'Diligent' and 'William F. Meseck' were assisting the steamer 'Kirsten B' into the slip of the Bethlehem Steel Company at 25th Street, Brooklyn. The 'Kirsten B' was using her own motive power. This respondent had been engaged to furnish tugs to assist the vessel to her slip and to furnish a pilot to direct the navigation of the 'Kirsten B' while en route. This respondent had no control over the movements of the tug 'William F. Meseck.' On information and belief, no collision with the motorboat 'Adelaide' occurred while the 'William F. Meseck' was assisting the 'Kirsten B.'"

In response to interrogatories filed by the libellant, the Meseck Towing and Transportation Co., Inc., admitted, among other things which add nothing not included in its answer, that the master of the tug William F. Meseck made a written report to the company of the "contact" which that tug made with the stern of the Adelaide and as requested it attached a copy of the report to its answers to the interrogatories. The report reads:

"I John Drysten Captain on tug 'Wm. Meseck' was assisting tug 'Diligent' shifting S/S 'Kirsten B' at Shewens Dry Dock 27 St., Brooklyn. I was made fast on the ship's port bow, with one head line on the ship's port well deck, the tug 'Diligent' was made fast aft on port side with head line, stearn line, and two line, the ship had no steam.

"While going in the 26 St. slip between the dock and dry dock #6 the ship brought tug 'Wm. Meseck' alongside the Dry dock #6. I got a signal to go ahead but I was too close to a motor boat named 'Adelaide' and I could not go back. I was to close to 'Diligent' as she was also alongside Dry dock #6. The 'Wm.' side brought up on boat 'Adelaide' stearn and done damage. Capt. Ludvig Mattisen on the bridge in charge."

■ Being a part of the answers made to interrogatories, this report is to be treated as a part of the pleadings. No further proof was needed to establish facts admitted in it as against Meseck Towing & Transportation Co., Inc. The Serapis, 37 Fed. 436. But being only a pleading of that respondent-claimant, it will not serve as a substitute for affirmative proof of allegations in the libel so far as Mathiasen is concerned.

■ Mathiasen's liability on this meagre record depends upon whether or not the answer it filed admits enough to show that it, or the tug it claimed, was negligent. We think the trial judge was right in holding that it did not. The admissions in

pleadings are to be construed together with the remainder of their content and are to be given effect subject to what qualifications there may be. Dennis v. Roberts, 9 Cir., 19 F.2d 1; Shrady v. Shrady, 42 App. Div. 9, 58 N.Y.S. 546. Mathiasen admitted that the tugs Diligent and William F. Meseck were assisting the steamer into the slip and that it had been engaged to furnish tugs so to assist the steamer and to furnish a pilot "to direct the navigation of the 'Kirsten B' while enroute," but it denied that it had any control "over the movements of the tug 'William F. Meseck'" and, upon information and belief, denied that any "collision with the motorboat 'Adelaide' occurred while the 'William F. Meseck' was assisting the 'Kirsten B.'" This put the libellant to its proof, and having produced none in so far as Mathiasen is concerned it failed to prove any liability on the part of that respondent or of the tug Diligent which it claimed.

Nor was the libellant in any better situation in respect to the other tug or its claimant when the case was submitted for decision. It had been made to appear from the pleadings that the William F. Meseck had collided with the Adelaide, a moored vessel, and the testimony had shown the latter had been damaged. But the libellant had alleged upon information and belief that when the Kirsten B entered the slip in tow "the master of the tug 'Diligent' or some other master employed by Mathiasen Shipping Co., Inc., was on the bridge of the 'Kirsten B' and directing the navigation of the tug and the steamer" when the collision between the William F. Meseck and the Adelaide occurred. The Meseck Towing & Transportation Co., Inc., did not deny that when it asserted in its answer that its tug was without fault and alleged that the collision was due either to the fault and neglect of the motorboat Adelaide in improperly blocking the slip, or to "the fault, neglect and want of care of the respondent, Mathiasen Shipping Co., Inc., its agents and servants, and the steamtug 'Diligent'" or to the fault of all of them. The report of the master of the Meseck does not contradict that. He states that when his tug hit the motorboat "Capt. Ludvig Mattisen" was "on the bridge in charge." With no evidence to the contrary, what has just been pointed out amounts to an admission by the libellant as to Meseck Towing & Transportation Co., Inc., that at the time of the collision the William F. Meseck was acting as an assisting tug under the orders of a third party on the bridge of the steamer, who was not acting for and in behalf of that tug or its claimant and who was in control of the operation. A tug in such a situation while acting wholly under the direction of the steamer and her pilot is not liable for damage done in the course of the movement of the steamer being assisted unless it is shown that she is guilty of some independent negligence. The William F. Meseck, so far as was here shown, was only a helper tug bound to obey orders from the bridge of the steamer and as such not responsible for navigation in compliance with such orders which she had no choice but to obey. The Connecticut, 103 U.S. 710, 26 L.Ed. 467; Car Float No. 4, 2 Cir., 89 F. 877, modified Slover v. The Erie R. R. Car Float No. 4, 2 Cir., 95 F. 495. She was but a "passive instrument" in the hands of the person in charge on the steamer's bridge, and the fact that she was the vessel which struck the Adelaide under these conditions does not make her the responsible party. Liverpool, B. & R. P. S. Navigation Co. v. Brooklyn E. D. Terminal, 251 U.S. 48, 40 S.Ct. 66, 64 L.Ed. 130.

Since there was no evidence to show any independent negligence of the William F. Meseck or that she was acting in any other capacity than as a mere appendage of the ship subject to the orders of the person on the ship in control of the movement, there is nothing to show any liability so far as that tug is concerned. The libellant had the burden of proof, and by leaving that burden undischarged failed to prove what it had alleged. Facts which do not appear of record are of no consequence. They cannot aid the libellant on this appeal. Cf. The Clara, 102 U.S. 200, 26 L.Ed. 145.

Decree affirmed as to the tug Diligent and its claimant and reversed as to the tug William F. Meseck and its claimant. Cause remanded with directions to dismiss the libel.