**CLEARY BROS. v. THE DAUNTLESS** et al. and two other cases.

The **CLEARY NO. 48.**

**THE ROWEN CARD.**

No. 14, Docket 21304.

United States Court of Appeals Second Circuit

Argued Oct. 3, 1949.

Decided Nov. 30, 1949.

Foley & Martin, New York City, proctors for Card Towing Line, Inc., appellant; Christopher Heckman, New York City, advocate.

J. Vincent Keogh, United States Attorney, Brooklyn, N. Y., proctor for United States, appellee and cross-appellant; Leo J. Curren, New York City, advocate.

Pyne & Lynch, New York City, J. R. Stewart, New York City, proctors for Dauntless Towing Line, appellee; Anthony V. Lynch, Jr., New York City, advocate.

Before L. HAND, Chief Judge, and SWAN and CLARK, Circuit Judges.

SWAN, Circuit Judge.

This litigation arose out of a collision in Kill Van Kull between scows in tow of the tug Dauntless and a coastwise barge in tow of the tug Port Henry. The respective owners of the two damaged scows and the owner of the disabled tug Rowen Card, which was also in tow of the Port Henry, brought separate suits in rem against the tug Dauntless. In each of the suits the claimant of The Dauntless impleaded in rem the tug Rowen Card and in personam (on in rem principles) the United States as owner of the tug Port Henry. The district court exonerated The Dauntless and held the other two tugs jointly liable. Their owners have appealed.

The trial judge made detailed findings of fact accompanied by an opinion and, after granting a motion for reargument, rendered a second opinion adhering to his original decision. The story of the collision may be summarized as follows: About midnight on July 18, 1945 the tug Rowen Card with the coastwise barge Philadelphia made fast on her starboard side was proceeding eastward through the Kill. When in the neighborhood of Bergen Point the cable slipped off the drum of The Card's steering gear and she became disabled. The tug and barge were carried by the flood tide toward the Jersey shore and came to anchor near the northerly edge of the channel and close to buoy No. 6. In response to a radio-telephone message from The Card, the tug Port Henry was dispatched to take them in tow. She arrived on the scene shortly before 2 A.M., nosed her way between the port side of the barge and the starboard side of The Card and after making fast ordered the barge to hoist her anchor. Both tugs were displaying running lights as well as towing lights. While the anchor was in process of being raised, the flotilla was sighted by the tug Dauntless, which was proceeding westward with a tow consisting of six scows in two tiers of three each and a stick lighter astern of the middle scow of the second tier. The Dauntless had out towing hawsers of 20 fathoms and was assisted by a helper tug made fast to her port side. She was on her own starboard side of the channel and the red lights of The Card and The Port Henry bore slightly to port. Under the belief that they were about to proceed southerly across the Kill, The

Dauntless at a distance of about 1000 yards blew one whistle and eased to starboard, continuing ahead at a speed of five and a half knots over the ground without having received any response to her signal. Neither The Card nor The Port Henry was maintaining a proper lookout and neither observed The Dauntless, despite her one blast signal, until she was less than 500 feet away. The Port Henry then blew an alarm and two blasts. The Dauntless answered with two and attempted to effect a starboard to starboard passage but failed by the narrow margin of three feet. The starboard corner of the scow Cleary No. 48 which occupied the starboard position in the first tier of the tow hit the starboard bow of the barge Philadelphia which was still at anchor. Both The Cleary No. 48 and the scow behind her, Seaboard No. 53, were damaged, as was also The Card which struck bottom. The Dauntless was exonerated and each of the other tugs was held at fault for displaying running lights, although not under way, and for failing to maintain an alert lookout.

On its appeal the United States urges not only that The Dauntless should have been held at fault but that The Port Henry should have been exonerated. This latter contention seems little short of preposterous. Regardless of whether it was a fault for The Port Henry to display running lights while the barge Philadelphia was still at anchor, she committed other faults which, if not the sole cause, at least contributed to causing the collision. Through failure to have an efficient lookout, she did not observe the approaching tow until The Dauntless was less than 500 feet away, and she then sounded not only an alarm but also two blasts, which her master admitted was an erroneous signal. This caused The Dauntless to reverse the course which might well have carried her clear of the barge and to accept The Port Henry's belated request for a starboard to starboard passing. Liability of the United States is clear.

There is more question as to the liability of The Card. One fault found against her was failing to maintain a lookout. It is urged on her behalf that upon the arrival of The Port Henry, the disabled Card became a vessel in tow and was not bound to maintain a lookout unless ordered to do so by the master of The Port Henry. We think the point is well taken. The Card was not using her engines; she, as well as The Philadelphia, was in tow of The Port Henry. The rule is well settled, in the absence of an agreement to the contrary, that when the tug supplies the motive power she becomes the dominant mind and the tow is required to follow her directions. The Margaret, 94 U.S. 494, 496, 24 L.Ed. 146; The Fort George, 2 Cir., 183 F. 731, 732, certiorari denied, Neall v. Maryland Dredging & Contracting Co., 219 U.S. 589, 31 S.Ct. 472, 55 L.Ed. 348; Baker, Carver & Morrell Ship Supplies v. Mathiasen Shipping Co., 2 Cir., 140 F.2d 522, 525. The master of The Port Henry admitted that he was in charge of the flotilla after his arrival on the scene. It does not appear that he gave any order to the Card to post a lookout.

After The Card was made fast on the port side of The Port Henry the master of The Card went to the pilot house of The Port Henry and remained there until after the collision. The United States argues that The Card's master undertook to be the lookout aboard The Port Henry and that any laxity on his part would preclude The Card's owner from recovering from the owner of The Port Henry. The trial court made no finding that The Card's master undertook to serve as The Port Henry's lookout, nor do we think the evidence would justify such a finding. We need not, therefore, consider what would have been the effect on the legal rights of The Card's owner, had he been acting as lookout for The Port Henry.

The Card was found at fault for displaying running lights although not under way. Her master testified that he turned on the running lights because he thought The Card might be obstructing The Port Henry's red light. We may assume, without decision, that it was a violation of the rules for The Card, after it became a vessel in tow of The Port Henry, to display running lights and towing lights.

On that assumption she would be liable unless the evidence proved that her fault could not have contributed to the collision. The Pennsylvania, 19 Wall. 125, 136, 22 L. Ed. 148; The Teaser, 3 Cir., 246 F. 219, 222; Gulf Oil Corp. v. The Socony No. 16, 2 Cir., 162 F.2d 869, 870. We think such proof was made. Capt. Pedersen of The Dauntless saw the red lights and towing lights of both tugs and correctly diagnosed the situation as that of a tow being made up and getting ready to get under way. He testified: "When I first blew I had an idea, seeing his lights, towing lights and all, I had an idea that he was making fast to the barge and getting ready to cross the bow on the other side." The fact that The Card was displaying improper lights did not mislead him in any way. Capt. Waxin of the helper tug testified that the fact that he saw two red lights and two sets of towing lights had no effect on his decision as to what he thought these boats were doing. And both of these navigators said that except for the alarm and the two blast signal of The Port Henry they would have passed port to port. Accordingly The Card's lights were not a contributing cause of the collision and liability should not have been imposed upon her.

■■■ The final question is as to exoneration of The Dauntless. Since the situation was in fact what it appeared to be, namely, that of a tug making up her tow and not yet on a steady course, it is a case to which the rule of special circumstances applies. The Aller, 2 Cir., 73 F. 875, 877; The Edward G. Murray, 2 Cir., 234 F. 61, 62; The John Rugge, 2 Cir., 234 F. 861, 862; Gulf Oil Corp. v. The Socony No. 16, 2 Cir., 162 F.2d 869, 870. Although The Dauntless was not a "burdened vessel," it was proper to blow her single blast as it indicated her intention to pass port to port. See The Transfer No. 18, 2 Cir., 74 F.2d 256, 258. Her master believed that she had room to pass on that side even though the flotilla did not get under way in time to cooperate in the maneuver. Whether he was right in this belief concerned only the safety of his tow, not the safety of The Port Henry's tow. Consequently a majority of the court think The Dauntless was justified in continuing on, although no response was received to her signal. Her fault, if any, was committed when she accepted the two blast signal of The Port Henry. But this, as the district court held, was in extremis, for if, as the two blasts indicated, The Port Henry was moving to its port the only chance was for The Dauntless to turn sharp left. We believe that under these circumstances The Dauntless at most committed an error in extremis and was properly exonerated. The interlocutory decrees are modified to hold the United States solely liable.

L. HAND, Circuit Judge (dissenting in part).

I agree as to The Card and The Port Henry, but I would hold The Dauntless. Rule III of Article 18 of the Inland Rules [1] provides that "if, when steam vessels are approaching each other, either vessel fails to understand the course or intention of the other, from any cause, the vessel so in doubt shall immediately signify the same" by giving the "alarm." It is a common habit, at least in the harbor of New York, for a vessel, which has had no answer to her first signal, to repeat it instead of sounding an "alarm"; and that does at least serve one purpose of the rule, which is to arouse the other vessel. However, since it requires "not less than four" short blasts, we have held it to be a fault to repeat an earlier signal,[2] as have other courts; and it is a graver fault for a vessel to sound no signal at all. In Henry Du Bois Sons Co. v. A/S Ivarans Rederi [3] we held a vessel for failing to do so. Each case will obviously depend upon how pressing is the need for an early response; and the facts here satisfy me that the Dauntless let herself get into too close quarters by waiting

---

1. § 203, Title 33 U.S.C.A.
2. James McWilliams Blue Line, Inc. v. Card Towing Line, 2 Cir., 168 F.2d 720;

Socony Vacuum Transportation Co. v. Gypsum Packet Co., 2 Cir., 153 F.2d 773.

3. 2 Cir., 116 F.2d 492.

for two minutes and until she was only 500 feet away from the flotilla.

Rule III is not limited to situations in which the vessels are on "steady courses"; it is a cautionary command, necessary whenever vessels "are approaching each other"; to carry over to it a limitation to "steady courses," which is proper in meeting or crossing situations, would be to disregard its comprehensive purpose. Moreover, it must also not be limited to situations in which a master, who has received no answer, does not in fact have doubts of the other vessel's "intention," if a "reasonable" master in his place would have had them; he cannot excuse his inaction by his ineptitude. Thus it makes no difference how little The Dauntless actually was in doubt; doubts ought to have arisen before two minutes had passed. Nor may she excuse herself on the ground that her fault did not contribute to the collision. Had she sounded an "alarm," The Port Henry would presumably have blown either once or twice. If she had blown once, The Dauntless could have carried out the navigation which she was planning. If The Port Henry had blown twice, as in fact she did, there is every reason to suppose that the navigation, which in fact missed success only by a hair, would have succeeded, for it would have begun earlier.