DIESEL TANKER W. A. WEBER,
INC., Plaintiff,

v.

The TUG MARGARET McALLISTER, her
engines, etc., and McAllister Broth-
ers, Inc., Defendants.

No. 70 Civ. 1954 (CHT).

United States District Court,
S. D. New York.

Sept. 18, 1973.

McHugh, Heckman, Smith & Leonard, New York City, for plaintiff; Stephen J. Buckley, New York City, of counsel.

Healy & Baillie, New York City, for defendants; Bruce McAllister, New York City, of counsel.

## OPINION

TENNEY, District Judge.

This is a suit by Diesel Tanker W. A. Weber, Inc., a New York corporation, against the tug MARGARET Mc-ALLISTER and McAllister Brothers, Inc., a New York corporation, for damage to plaintiff's tanker W. A. WEBER which occurred when the oil barge PITTSTON 60 (since renamed Mc-ALLISTER 107), in tow of the tug MARGARET McALLISTER, collided with the tanker W. A. WEBER during the evening of February 11, 1969 in Arthur Kill Channel. As a result of the collision, plaintiff's tanker and defendant's barge were both damaged. Defendant has counterclaimed for damage to the barge. The amount of damages is not at issue, it being agreed that damages to W. A. WEBER is $16,000 and that damages to the barge PITTSTON 60 is $3,958. The court has jurisdiction in this admiralty and maritime claim pursuant to 28 U.S.C. § 1333(1).

The tanker W. A. WEBER is approximately 191½′ long, 31′ wide and 12′ deep, diesel powered, single propeller, and is steered from a pilot house on her stern some 20′–25′ above deck level. Her draft, in light condition at the time of the collision, was almost zero at the bow and 8′ 6″ at the stern. At 1835 hours on the evening of February 11, 1969 she left Oilport Terminal, Newton Creek, New York and proceeded southbound in the East River across the Lower Harbor and through Kill Van Kull and then Arthur Kill Channel bound for the Chevron Oil Terminal at Perth Amboy, New Jersey, in Arthur Kill Channel. She was displaying her mast and range light, her side lights and her stern light. The weather was clear, the wind west and light, 6–8 mph, with a following or ebb tide. During this voyage Captain Bernt Olsen, a duly licensed navigator, was in the pilot house in charge of the watch, steering the vessel and giving orders to the engineer on watch by means of bell signals. With him, and acting as look-out, was Joseph Zamajtuk, a deckhand, who at the time of the collision was sitting on the port side of the deck house by a window and looking out.

Meanwhile, the tug MARGARET McALLISTER was proceeding south in the Arthur Kill Channel, having departed the McAllister shipyard in Jersey City bound for the Hess Oil dock at Port Reading with the barge PITTSTON 60 along her port side—the tug being towards the stern of the barge. The tug is 102.8′ long and 28.1′ wide, and the barge is 230′ long and 43′ wide, with 16′ sides. The barge's draft, in light condition at the time, was 2′–3′. Aboard the tug was its Master, Captain Dalland and a deckhand, Van Wolken. Aboard the barge was its captain, Captain Summerfield, and a deckhand, Buzzell. The tug with the barge alongside arrived off Port Reading around 2100 hours. When she arrived at a point between buoys 11 and 13 approximately 100–150′ abeam of the Hess dock, the barge crew was informed by personnel on the dock that the barge would have to be tied up stern in, which necessitated a change of position on the part of the tug—i. e., the tug would have to change its position on the starboard side of the barge bow to bow and move around to the port side of the barge bow to stern and "back" the barge into the dock. At this time the tug was made up to the starboard quarter of the barge and the barge was secured by a bow line, a stern line and a "strap" (a line with an eye on both ends which leads from a bitt on the side of the tug aft to a bitt on the side of the barge). The tug had its 2 vertical tow lights on, and the barge had its port

lights on, i. e., one white light on the outside corner (port side) of the bow and the same on the stern. However, when the tug moved to the other side of the barge, it became necessary to change the lights to the other side of the barge.

Captain Olsen of the W. A. WEBER testified that he first observed the tug MARGARET McALLISTER and the barge when the tanker was somewhere between Tufts Point, which is on the New Jersey side of the Arthur Kill Channel, and Smoking Point, which is on the Staten Island side of the Arthur Kill Channel, proceeding on her own starboard side of the Port Reading Reach and approaching buoy 15 on the Jersey side. At that time he observed the tug and the barge off beacon 14 and buoy 14–A on the left or Staten Island side of the channel, both vessels lying still in the water. The W. A. WEBER passed within 50′ of buoy 15 and gave one blast on her whistle, indicating her intention to pass port to port on the starboard side. Although no response was received from the tug or her tow, the W. A. WEBER maintained course and speed heading for buoy 13, and while between buoys 15 and 13 again gave one blast on her whistle without response from the tug or barge.[1] As the tanker approached buoy 13, Captain Olsen testified that he observed the tug and barge coming against him on his port side and heading for the New Jersey side of Port Reading Reach. The tanker slowed down to half-speed and sounded the danger signal on her air whistle, again without response from the tug or barge. At the same time the tanker went sharp right rudder passing as close to buoy 13 as possible, but not sufficiently to avoid a collision with the barge which struck the tanker somewhat aft of her port bow.

Captain Dalland of the tug MARGARET McALLISTER testified that he had stopped just south of buoy 13 with the tug out of the channel and the barge partially in the channel and on the oppo-site, or New Jersey side, of the channel from beacon 14 and buoy 14–A; that he then cast off the barge and took the tug around it to change the lines. Before he cast off the barge he observed the tanker W. A. WEBER approaching between buoys 15 and 13. He heard no signals until the danger signal and sounded none himself. There would appear to be no question that the collision occurred on the New Jersey side either slightly in or out of the channel in the vicinity of buoy 13.

Although there is some dispute as to the movement of the tug and barge immediately prior to the collision, there is no dispute as to the facts constituting fault on the part of both the tug and the tanker.

■■ It seems clear that the tug was maneuvering at the time of the collision, whether or not she had the barge partially in control. It is admitted that the MARGARET McALLISTER did not maintain a lookout while maneuvering in the vicinity of buoy 13. The tug captain and the barge captain saw the downbound tanker on her starboard side of the channel and less than a mile away before the tug let go the lines to the barge, yet they paid no further attention to the tanker until the danger signal was sounded. Even though the tug and barge were maneuvering, rather than on a steady course, the tug was required to keep a proper lookout. Gulf Oil Corp. v. Socony No. 16, 162 F.2d 869 (2d Cir. 1947); see also Cleary Bros. v. The Dauntless, 178 F.2d 72 (2d Cir. 1949); 33 U.S.C. § 221 (1970). Such failure to have a lookout on the barge or on the tug was a statutory fault for which the tug MARGARET McALLISTER must be held liable unless it appears that this failure neither did, nor could have, contributed to the cause of the collision. The Pennsylvania, 86 U.S. 125, 22 L.Ed. 148 (1873); Gulf Oil Corp. v. Socony No. 16, supra, 162 F.2d at 870. Under the circumstances of the instant case it is impossible to be sure beyond a reason-

---

1. At the Coast Guard hearing, Captain Olsen testified to only one one-blast signal.

able doubt that if a continuous lookout was maintained, the tug would nevertheless have failed to act in time to avoid the collision.

 The MARGARET McALLISTER also failed to sound any whistle signal. If she was on the New Jersey side of the channel she could have proposed a starboard to starboard passing, or she could have sounded the danger signal. She did neither. It is clear that the tow was not proceeding on a steady course, but was maneuvering. Consequently, the situation was one of "special circumstances" (33 U.S.C. § 212 (1970)) which requires each vessel to act prudently. John Rugge, 234 F. 861 (2d Cir. 1916). The rule of "special circumstances" does not excuse a failure to signal. Transfer No. 18, 74 F.2d 256 (2d Cir. 1934); Gulf Oil Corp. v. Socony No. 16, *supra,* 162 F.2d at 870.

Furthermore, the MARGARET Mc-ALLISTER did not act prudently in maneuvering. After observing the W. A. WEBER, she cast off the barge with the bow of the barge swung towards the New Jersey shore and the barge at least partially obstructing the starboard side of the channel along which the W. A. WEBER was proceeding as required by the narrow channel rule.

The tanker W. A. WEBER was also at fault. Here again there is no dispute that the tanker W. A. WEBER on at least one occasion while proceeding on the starboard side of the channel gave one blast on her steam whistle to indicate to the tug MARGARET Mc-ALLISTER and barge a port to port passing. There is also no dispute that the tug made no response. Yet the tanker maintained course at full speed until 30 seconds before the collision, at which time she sounded the alarm and went from full ahead to half ahead and hard right rudder in an attempt to effect a port to port passing. As has been well stated in The New York, 175 U.S. 187, 201, 20 S.Ct. 67, 72, 44 L.Ed. 126 (1899):

"Nothing is better settled than that, if a steamer be approaching another vessel which has disregarded her signals, or whose position or movements are uncertain, she is bound to stop until her course be ascertained with certainty." (Citations omitted.)

For the tanker to continue on her course without receiving a response to her signal was negligence. James McWilliams Blue Line v. Card Towing Line, 168 F. 2d 720, 721–722 (2d Cir. 1948); A. H. Bull S.S. Company v. United States, 34 F.2d 614 (2d Cir. 1929).

The court concludes that the collision in this case was the result of the joint negligence of the W. A. WEBER and the MARGARET McALLISTER, that each contributed equally to the fault, and that damages should be borne equally. The foregoing opinion shall constitute the findings of fact and conclusions of law of the Court. Submit judgment in conformity herewith.